206 N.W.2d 871 (1973)
In the Matter of the Termination of the Parental Rights of the Mother of Baby Girl H., a child.
Rita COYNE, Petitioner and Respondent,
v.
R. K. H., Appellant,
The Executive Director of the Social Service Board of North Dakota, Respondent.
Civ. No. 8840.
Supreme Court of North Dakota.
April 12, 1973.
*872 Albert A. Wolf and Robert O. Wefald, Bismarck, for appellant.
Thomas F. Kelsch, State's Atty., Burleigh County, Bismarck, for respondents.
PAULSON, Judge.
The mother of Baby Girl H. [hereinafter Baby H.] has appealed from a final order of the juvenile court terminating her parental rights. Baby H. was born on April 5, 1972. At the time of Baby H.'s birth her mother was sixteen and a half years of age and was unmarried. In addition, as a result of considerable difficulties occurring during her minority, the mother had been adjudged to be an unruly child and was under the care, custody, and control of the State Youth Authority. On the date of Baby H.'s birth the juvenile court issued a temporary order for the care, custody, and control of Baby H., placing custody with the Burleigh County Welfare Board for placement of the child in a suitable foster home. As a result of this temporary custody order, the mother of Baby H. has at no time had custody and control of her daughter.
On May 11, 1972, approximately one month after the issuance of the temporary *873 custody order, a petition was filed with the juvenile court which alleged that Baby H. was a "deprived child" within the purview of the Uniform Juvenile Court Act, Chapter 27-20 of the North Dakota Century Code, because the child was without the proper parental care or control necessary for her mental or emotional development. The petitioner requested that the parental rights of the mother of Baby H. be terminated. Pursuant to this petition, a summons was issued and served and a hearing was held by the juvenile court on May 15, 1972. As a result of this hearing, the juvenile court issued an order and decree terminating the parental rights of the mother in Baby H. The mother has appealed from this order and decree.
The issue presented by this case is unique and of first impression in this court and, simply stated, is: May the juvenile court, on the basis of prognostic evidence indicating the mother's inability to provide proper parental care for her child, terminate the parental rights of the mother in her child, where the mother has never had the opportunity to demonstrate her maternal abilities because the custody of the child had been placed in the county welfare board immediately upon its birth?
Resolution of the issue presented by this case requires that we resort to the provisions of the Uniform Juvenile Court Act (Ch. 27-20, N.D.C.C.). Section 27-20-44(1)(b), N.D.C.C., confers upon the juvenile court the power to terminate the parental rights of a parent in its child if:
"1. . . .
"b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; . . ."
Thus, § 27-20-44(1)(b) requires that the evidence establish three factors before a juvenile court may terminate the parental rights of a parent. These factors are: 1) that the child is a "deprived child" within the purview of the Uniform Juvenile Court Act, Chapter 27-20, N.D.C.C.; 2) that the conditions and causes of the deprivation are likely to continue or will not be remedied; and 3) that by reason of these continuous or irremediable conditions and causes the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm. In re J. Z., 190 N.W. 2d 27 (N.D.1971); In re J. V., 185 N.W.2d 487 (N.D.1971). In determining whether the evidence establishes these three factors, this court held in In re A. N., 201 N.W.2d 118 (N.D.1972), in paragraph 3 of the syllabus:
"An appeal to the supreme court shall be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court giving appreciable weight to the findings of the juvenile court."
As stated previously, the first factor which must be established by the evidence, before a juvenile court may terminate the parental rights of a parent, is that the child is a "deprived child" within the purview of the Uniform Juvenile Court Act (Ch. 27-20, N.D.C.C.). Section 27-20-02(5)(a), N.D.C.C., defines a "deprived child" as follows:
"Definitions.As used in this chapter:
. . . . . .
"5. `Deprived child' means a child who:
"a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of his parents, guardian, or other custodian; . . ."
Counsel for appellant has urged upon this court a literal construction of the Uniform Juvenile Court Act (Ch. 27-20, *874 N.D.C.C.) In so doing, counsel for appellant argues that Baby H. is not a "deprived child" within the purview of § 27-20-02(5)(a), N.D.C.C., because the child, while at no time having received any parental care, has always had other proper care, and that, therefore, the first of the three factors required by § 27-20-44(1)(b), N.D.C.C., has not been established. However, we conclude that the Uniform Juvenile Court Act (Chapter 27-20, N.D.C.C.), and § 27-20-02(5)(a) thereof should not be limited by so literal a construction. Rather, we believe that in construing the Uniform Juvenile Court Act, the spirit of its enactment must be considered and the Uniform Juvenile Court Act should be construed, if possible, in accordance therewith. In Perry v. Erling, 132 N.W.2d 889, 896 (N.D.1965), our court, quoting with approval from 82 C.J.S. Statutes § 325 (1953), stated:
"`In pursuance of the general object of giving effect to the intention of the legislature, the courts are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof, it being generally recognized that whatever is within the spirit of the statute is within the statute although it is not within the letter thereof, while that which is within the letter, although not within the spirit, is not within the statute. Effect will be given the real intention even though contrary to the letter of the law.'"
We adopt this reasoning as appropriate in this case.
We also believe that a liberal construction of the Uniform Juvenile Court Act (Ch. 27-20, N.D.C.C.), is mandated by § 27-20-01(1) thereof, which provides:
"Interpretation.This chapter shall be construed to effectuate the following public purposes:
"1. To provide for the care, protection, and wholesome moral, mental, and physical development of children coming within its provisions;"
Therefore, we conclude that § 27-20-02(5)(a), N.D.C.C., should be construed so as to include within its definition of a "deprived child" the child of a mother who, while never having had the opportunity to care for her child and thereby demonstrate her maternal abilities, is shown to be presently incapable of providing proper parental care for her child. Such a construction would be consistent with the stated purpose of the Uniform Juvenile Court Act (Ch. 27-20, N.D.C.C.), which is to provide for the care, protection, and wholesome moral, mental, and physical development of a child (§ 27-20-01, N.D.C. C.), since such construction would enable the juvenile court to take custody of a child pursuant to § 27-20-30, N.D.C.C., solely upon the basis of sufficient prognostic evidence that the mother would be incapable of providing proper parental care for the child, without requiring that the child be subjected to an actual deprivation before the juvenile court takes custody.
Counsel for appellant has argued that the conclusion which we now reach is precluded by our decision in In re J. V., supra. However, we believe that In re J. V. can be distinguished from the instant case. In In re J. V., supra, the mother had custody and control of the child and thereafter voluntarily relinquished such custody and control of the child to the county welfare board in order to avoid potential harm to the child as a result of the mother's own emotional instability, which was caused by marital disharmony. In addition, at the time of the hearing to terminate the parental rights of the mother of J. V., the mother offered concrete evidence of her rehabilitation and of her present ability to provide proper parental care for J. V. in a new home established by herself and her new husband. Therefore, we believe that the prognostic evidence indicating J. V.'s mother's ability to provide proper parental care for J. V. was sufficiently more persuasive than that in the case at bar and we *875 believe that the two cases can be distinguished on that basis.
While we now liberally construe the definition of a "deprived child" contained in § 27-20-02(5)(a), N.D.C.C., so as to allow the juvenile court to take custody of a child pursuant to § 27-20-30, N.D.C.C., solely upon the basis of prognostic evidence clearly and convincingly indicating that a mother will be incapable of caring for her child, it remains for this court to determine whether or not the prognostic evidence of Baby H.'s mother's inability to provide proper parental care for Baby H. is sufficient to support a finding by the juvenile court that Baby H. is a "deprived child" within the purview of § 27-20-02(5)(a), N.D.C.C.
We conclude that the prognostic evidence presented by the State in the hearing on the petition for the termination of parental rights is sufficient to support a finding by the juvenile court that the child is a "deprived child". The testimony of the counselors and social workers who have been working with Baby H.'s mother since she was placed under the jurisdiction of the State Youth Authority as an "unruly child" clearly and convincingly indicates that she would be unable to provide proper parental care for Baby H. Their testimony points out the many emotional problems which have troubled the appellant throughout a large part of her minority and lends credence to the State's position that such emotional instability would inhibit the appellant's ability to care for Baby H.
While we conclude that the evidence adduced at the hearing on the petition to terminate the parental rights of the mother of Baby H. was sufficient to support a finding by the juvenile court that the child is a "deprived child", we do not believe that the evidence adduced at such hearing is sufficient to support a termination of the mother's parental rights pursuant to § 27-20-44, N.D.C.C. As stated previously, that a child is a "deprived child" is only one of three factors which must be established by the evidence before a juvenile court may order a termination of the parental rights of a parent pursuant to § 27-20-44. That the conditions and causes of the deprivation are likely to continue or will not be remedied and that, by reason of these continuous or irremediable conditions and causes, the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm must also be shown. In re J. Z., supra; In re J. V., supra.
A remand so that additional evidence may be received relative to determining more clearly whether the deprivation is likely to continue seems in order. This hearing should be held only after due notice has been served upon all parties interested and ample time has been afforded to prepare for same.
This approach is consistent with recent decisions of the Supreme Court of Oregon, which Court has carefully considered the sufficiency of the evidentiary grounds for termination of parental rights. State v. Wiese, 498 P.2d 813 (Or.App.1972); State v. Campbell, 496 P.2d 249 (Or.App.1972); State v. McMaster, 259 Or. 291, 486 P.2d 567 (1971); State v. Blum, 1 Or.App. 409, 463 P.2d 367 (1969); State v. Grady, 231 Or. 65, 371 P.2d 68 (1962). In these decisions the Supreme Court of Oregon, while stating that the parental rights of a parent may be terminated solely upon the basis of prognostic evidence indicating that the parent will be unable to provide proper parental care for the child, has also stated that the prognostic evidence must be of such a nature as to show: 1) that the parent is presently unable to supply physical and emotional care for the child, with the aid of available social agencies, if necessary; and 2) that this inability of the parent will continue for time enough to render improbable the successful assimilation of the child into a family if the parent's rights are not terminated. State v. Blum, supra 473 P.2d at 371.
On remand, expert witnesses, after each has interviewed the appellant, may be *876 called to testify, preferably in person, as to the appellant's present and future ability to provide proper parental care for Baby H. The appellant may also testify as to her activities from May 15, 1972, the date of the order and decree terminating her parental rights and offer any testimony as to her future plans for herself and Baby H.
We do not intend by what is indicated here to limit evidence otherwise admissible at the remand hearing. The juvenile court, upon review of all of the pertinent facts, at the conclusion of the remand hearing, should then determine whether parental rights should be terminated or whether some other course of action may be appropriate.
The order and decree terminating parental rights is reversed and the case is remanded to the juvenile court for further proceedings in accordance with this opinion.
STRUTZ, C. J., and ERICKSTAD, TEIGEN, and KNUDSON, JJ., concur.