In the Interest of M. N., a child.

Michael BECKER, Petitioner and Appellee,

v.

M. T. N. and E. N., Respondents and Appellants.

Civ. No. 9743.

Supreme Court of North Dakota.

June 26, 1980.

Ralph A. Vinje, Bismarck, for respondents and appellants.

Gail H. Hagerty, Sp. Asst. Atty. Gen., Bismarck, for petitioner and appellee.

PAULSON, Justice.

M.T.N. ["mother"] and E.N. ["father"] appeal from a November 27, 1979, judgment of the Emmons County Juvenile Court. The issue presented for review is whether or not the juvenile court erred in terminating the parental rights of M.T.N. and E.N. to their minor child, M.N. M.T.N. and E.N. have conceded that the juvenile court's finding that M.N. is a deprived child is correct and have not appealed from the finding of deprivation. We affirm the finding of deprivation but reverse and judgment which terminated the parental rights of M.T.N. and E.N.

M.N. [hereinafter "Michael", a pseudonym] was born on December 12, 1970. His natural parents, M.T.N. and E.N., have a history of psychological and emotional disorders.

E.N. is a chronic alcoholic and has been diagnosed as having a passive-aggressive and passive-dependent personality. The record reveals that E.N. was a soldier in the Korean War and had suffered from shell shock. He has been hospitalized on several different occasions for mental health problems stemming from his abuse of alcohol. In 1959, he was hospitalized in the State Hospital at Jamestown for 20 days and was diagnosed as having a character disorder. He was hospitalized on two separate occasions in 1966 and was diagnosed as a passive-aggressive personality. He was hospitalized for 3 days in 1975, for 9 days in 1978, and again in 1979. A clinical psychologist at Jamestown Hospital, Dr. Robert Gulkin, testified that, in his opinion, E.N. is a chronic alcoholic and the prognosis for improvement of E.N.'s mental health is very remote.

M.T.N. was hospitalized from December 26, 1968, through March of 1969. At that time she was diagnosed as a schizophrenia paranoid type. She was next hospitalized in the State Hospital from November of 1969 to April of 1970. She was hospitalized on several different occasions in 1978, namely, on June 23, July 5, and from August 8 through October 13, 1978. On April 3, 1979, she was hospitalized with a diagno-

sis of schizophrenia, schizo-affective type. She was released on August 16, 1975, and returned to the hospital on September 4, 1979. Dr. Gulkin testified that the prognosis for M.T.N.'s significant improvement is guarded.

Michael lived with his natural parents, M.T.N. and E.N., from his birth in 1970 until he was taken from their home by Emmons County Social Services in June of 1978. On August 17, 1978, Michael was found to be a deprived child. Michael was placed in a foster home in June of 1978. His foster mother testified that when Michael first came to live with them he would not respond to verbal commands such as "[Michael] take off your shirt and go put pajamas on". He would not dress himself, brush his teeth, put his shoes on, or go to the bathroom without assistance. He was almost eight years old at that time. His foster mother testified that Michael has progressed considerably since he first came to the foster home.

Michael requires a special low protein diet because he was born affected by phenylketonuria ["PKU"].[1] He is in need of special education because he is functionally behind other children of his chronological age. Dr. Olov G. Gardebring, a clinical psychologist, testified that "In some areas . . . [Michael] functions not too different from the average boy, but in other areas, particularly relating to abstract thinking, we find it's a great deal below average. Special education is definitely needed for a child of this kind of functioning." Dr. Gardebring also testified that Michael is in need of socialization, that is, "being with other people and with other children." He testified that Michael needs consistency and freedom from upsets in his home life "in order to achieve his full potential as a human being".

Cases involving the termination of parental rights are always difficult. A court must determine "the best interests of the child". In *McGurren v. S. T.*, 241 N.W.2d 690, 695 (N.D.1976), we said:

"The basic premise in a termination of parental rights case is that a parent has a fundamental, natural right to his child. This right has been recognized to be of constitutional dimension. However, this is not an absolute right."

This court summarized its previous decisions regarding termination of parental rights in the case of *In the Interest of J. K. S.*, 274 N.W.2d 244, 249 (N.D.1979), as follows:

"Section 27-20-02(5)(a), N.D.C.C., defines a 'deprived child' as one who:

" 'Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of his parents, guardian, or other custodian; . . .'

"A summary of our previous decisions construing this section is found in *In Interest of L. R. S.*, 271 N.W.2d 562 (N.D. 1978). That decision and other cases referred to therein indicate:

"1. The term 'proper care.' as used in Section 27-20-02(5)(a), N.D.C.C., means that the parents' conduct in raising their children must satisfy the minimum standards of care which the community will tolerate.

"2. Evidence that compares the childrearing skills of the natural parents with those of the foster parents will not alone support a finding of deprivation if the parents' efforts meet the minimum standards of care.

"3. Lack of cleanliness of the home does not alone establish deprivation.

"4. The finding of poverty or lack of education or culture is not sufficient to establish deprivation.

"5. Parents have a constitutional right to the custody and companionship of their children, but this right is not absolute and parents are not entitled to

1. The 1967 Session of the North Dakota Legislature has taken steps to focus on the problems involved in the testing and treatment for phe-

nylketonuria. Ch. 25–17, N.D.C.C. (S.L.1967, ch. 224).

the custody of their children under all circumstances.

"6. Parents are entitled to a presumption that they are fit parents, and the burden of disproving this presumption of parental fitness is on the challenger.

"7. Deprivation must be shown by clear and convincing evidence.

"In addition, we have indicated reluctance to remove a child from the parents unless 'diligent effort has been made to avoid such separation,' and unless it is necessary to prevent serious detriment to the welfare of the child. *Bjerke v. D. T.*, 248 N.W.2d 808, 814 (N.D.1976), quoting *In re Klugman*, 256 Minn. 113, 97 N.W.2d 425, 429 (1959). We have also indicated that we are aware of the argument that it is dangerous to allow social workers to determine how a family is run. *Bjerke, supra*, 248 N.W.2d at 814."

M.T.N. and E.N. have not challenged the finding that Michael is a deprived child. They do contend, however, that there is not sufficient evidence in the record to justify a termination of parental rights. The State contends that the best interests of Michael require termination of the parental rights of M.T.N. and E.N.. M.T.N. and E.N. argue, however, that there is an alternative short of termination of parental rights which is in in the best interests of Michael.

Section 27–20–44(1)(b), N.D.C.C., provides for termination of parental rights as follows:

"*27–20–44. Termination of parental rights.*—1. The court by order may terminate the parental rights of a parent with respect to his child if:

.    .    .    .    .

b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or   .   .   ."

Section 27–20–46, N.D.C.C., provides that the effect of an order terminating parental rights is as follows:

"*27–20–46. Effect of order terminating parental rights.*—An order terminating parental rights of a parent terminates all his rights and obligations with respect to the child and of the child to or through him arising from the parental relationship. The parent is not thereafter entitled to notice of proceedings for the adoption of the child by another nor has he any right to object to the adoption or otherwise to participate in the proceedings."

Section 27–20–36(1), N.D.C.C., provides that "An order terminating parental rights is without limit as to duration". In the case of *In Interest of J. A.*, 283 N.W.2d 83, 91 (N.D.1979), this court stated that:

". . . in order that the court may terminate parental rights, it must find: (1) that the child is a 'deprived child' as that term is defined by Section 27–20–02(5), N.D.C.C.; (2) that the conditions and causes of the deprivation are likely to continue or will not be remedied; and (3) that by reason thereof the child is suffering or probably will suffer serious physical, mental, moral, or emotional harm. Sec. 27–20–44(1)(b), N.D.C.C. See also *In re H*, 206 N.W.2d 871 (N.D.1973). These three factors must all be proved by clear and convincing evidence if the court is to terminate parental rights."

Our review of the findings of the juvenile court is much broader than the "clearly erroneous" rule of Rule 52(a) of the North Dakota Rules of Civil Procedure. We review the evidence and the entire record in a manner akin to the former trial de novo. *In the interest of J. K. S.*, supra 274 N.W.2d at 249, 250; § 27–20–56(1), N.D. C.C. Section 27–20–56(1), N.D.C.C. requires us to give "appreciable weight" to the findings of the juvenile court but we are also required to determine that the findings are supported by "clear and convincing evidence". *J. K. S., supra* 274 N.W.2d at 251.

The juvenile court found that the mental illnesses of M.T.N. and E.N. are the causes of Michael's deprivation and that the condi-

tions are likely to continue and will not be remedied. We have reviewed the record extensively, and we do not find clear and convincing evidence that termination of parental rights is in the best interests of Michael.

As previously indicated, both parents have a history of mental illness. We have mentioned that proper care is the minimum standard the community will tolerate. There is no evidence in the record that Michael was abused or neglected by his parents. The Social Services Board investigation began because of what was termed "educational neglect". M.T.N. and E.N. were unwilling to accept the fact that Michael was in need of special education. The abuse and neglect form based on "educational neglect" was filed in May of 1978 and in June of 1978 Michael was taken into temporary custody by the Emmons County Social Services Board. The series of 1978 and 1979 hospitalizations of M.T.N. began at this time. It appears that prior to the time that Michael was removed from the home, M.T.N. had not been hospitalized since 1970.

■ The State contends that termination is in the best interests of Michael because he is an adoptable child. They argue that if Michael is not adopted, the termination of parental rights can be vacated pursuant to § 27–20–37(2), N.D.C.C., which provides as follows:

"*27–20–37. Modification or vacation of orders.*

.    .    .    .    .

2. Except an order committing a delinquent or unruly child to the state industrial school, an order terminating parental rights, or an order of dismissal, an order of the court may also be changed, modified, or vacated on the ground that changed circumstances so require in the best interest of the child. *An order terminating parental rights and the parent and child relationship may be vacated by the court upon motion of the parent if the child is not on placement for adoption and the person having custody of the child consents in writing to the vacation of the decree.* An order granting probation to a child found to be delinquent or unruly may be revoked on the ground that the conditions of probation have not been observed.    .    .    ." [Emphasis added.]

The only testimony regarding the adoptability of Michael came from Margaret Schaar, a social worker in Emmons County, who testified that, in her opinion, Michael was adoptable. She testified that she had contacted Children's Village in Fargo about the feasibility of adoption of a then eight-year-old child with special problems and that their reaction was very positive.

We do not believe that the record supports by clear and convincing evidence a finding of continued deprivation justifying termination of parental rights. The record reveals that M.T.N. and E.N. now recognize that Michael is in need of special education. To that end, they have conceded deprivation in order that Michael may continue to get the type of help and make the type of progress he is now making in the foster home.

M.T.N. and E.N. have their share of mental and emotional problems but the record indicates that they love and care for Michael very much. Although they are poor, they manage their finances well and have always paid careful attention to the special dietary needs of Michael. If they are at fault for anything in relation to Michael, it is in being overprotective. It is true that they have indulged their son by treating him like a baby and helping him change his clothes at an age when other children are expected to do so. Because he is an only child, Michael lacks the interaction he would have in a home with more children. However, E.N. testified that Michael often played with children in the park across the street from their home. It is true that M.T.N. and E.N., in their distorted view of reality, believed that Michael did not need special education and held hopes that he would some day become an electrician or an engineer.

M.T.N. and E.N. visited Michael fifteen times during the period when he was in foster care after removal from their home. During these visits they did not always openly demonstrate their love for Michael by kissing and caressing him. Contrary to what the Social Services people may believe, it is not everyone's reaction to publicly manifest their love for their young by touching. The foregoing facts, namely, that a child is an only child, that his parents have hopes for him beyond his abilities, and that they do not publicly demonstrate their love for him, do not, in our estimation, add up to facts warranting termination of the parental rights of those parents.

After extensive examination of the record, we conclude that the best interests of Michael require a reversal of the judgment terminating at this time the parental rights of M.T.N. and E.N., thus permitting a continuation of Michael's foster care and special education, and a continuation of his visitations and contacts with his natural parents whom he has known as his parents for almost ten years. We recommend that the district court review the issues of termination of parental rights and Michael's adoptability at the end of one year.

For the reasons stated in the opinion, the judgment as to deprivation is affirmed; and the judgment as to termination of parental rights is reversed.

ERICKSTAD, C. J., and VANDE WALLE, PEDERSON and SAND, JJ., concur.

