Nancy KLEINGARTNER, Petitioner and Appellee,

v.

D.P.A.B., Mother, Respondent and Appellant,

E. C., Putative Father, and The Executive Director of the Social Service Board of North Dakota, Respondents.

Nancy KLEINGARTNER, Petitioner and Appellee,

v.

D.P.A.B., Mother, Respondent and Appellant,

B. B., Father, and The Executive Director of the Social Service Board of North Dakota, Respondents.

Civ. No. 9980.

Supreme Court of North Dakota.

Oct. 6, 1981.

Patricia L. Burke, Asst. State's Atty., Bismarck, for appellee.

Ralph A. Vinje, Bismarck, for appellant.

SAND, Justice.

This is an appeal by D.P.A.B. [Donna] from two juvenile court orders terminating her parental rights. One of the orders terminated her parental rights as to T. P. [Terri], and the other terminated her parental rights as to Je. B. [Jeff], Jo. B. [John], and Ja. B. [James]. Donna is the natural mother of Terri, Joseph, John and James. E. C. [Edward] is the natural father of Terri, and B. B. [Bob] is the natural father of the other three children. (All names are pseudonyms.)

The record reflects a traumatic early life for Donna. When she was thirteen years old, her father contacted social services regarding her school attendance and overnight stays away from home. She was placed in the custody of the state youth authority in Fargo in 1971 and was committed to the North Dakota State Industrial School in May 1972, where she remained until December 1973. After leaving SIS, Donna entered the Job Corps until March 1974, when, at the age of 16, she married her first husband. After one month Donna had that marriage annulled. She moved to Fort Yates, North Dakota, in May 1974 and lived out of wedlock with Edward. On 2 Apr 1975 Terri was born as the result of this relationship.

After terminating her relationship with Edward, Donna took up residence with Bob and became pregnant with her second child, Jeff, who was born on 3 Dec 1976. At some point Donna married Bob and on 2 Mar 1979 she gave birth to her third and fourth children, John and James. Bob and Donna were later divorced.

The record discloses that prior to February 1980, Donna had abused alcohol and nonprescription drugs. She had mental problems which resulted in her hospitalization. She was diagnosed as having a combination of antisocial and schizophrenic problems. She also had been hallucinating and hearing voices. The testimony indicated that the pressures of raising four young

children caused these problems and also resulted in the children being placed in foster care homes at various times. Several abuse and neglect reports were forwarded to child protective services. Eventually Donna left the children and a note with a friend, indicating that she would come back for them in two years, or when she had gotten her life straightened out.

In January 1980 Nancy Kleingartner, a resident of Burleigh County, filed a petition for termination of Edward's and Donna's parental rights as to Terri. She also filed a similar petition to terminate Bob's and Donna's rights as to Jeff, John and James. The two petitions were consolidated for trial. Neither Edward nor Bob appeared at the hearing before the juvenile court, and they were determined to have abandoned their respective children.

At the hearing before the juvenile court in March 1980 Donna testified that she had accepted religion and God into her life as a means of coping with her problems and that she was attempting to stabilize her life. She asked for additional time to complete her rehabilitation process so as to be able to care for her children. The juvenile court, without informing her, essentially granted her additional time by not making a decision immediately after the hearing and by delaying the process until December 1980 when the court scheduled a further hearing.[1] Prior to receiving testimony at the second hearing the juvenile court indicated

that the additional time was given without notice to Donna so that the court would have the benefit of learning about her behavior and actions without the impetus of her trying to create an impression upon the court to retain her parental rights.[2] The court, at the second hearing, wished to review her "mental and emotional capabilities and to determine if she had progressed since the March hearing and also whether this progress was out of genuine motivation rather than out of fear of the stigma and emotional trauma of losing her children."

At the second hearing, in December 1980, the juvenile court heard additional testimony concerning Donna's efforts to stabilize her life. In addition to Donna's own testimony, two members of her church organization, as well as her pastor, testified as to the changes in her life. Dr. Olov Gardebring also testified concerning the present status and future needs of the children. After the second hearing, the district court entered an order terminating the parental rights of Edward, Bob, and Donna as to their children. Donna appealed to this Court.[3]

The only issue raised by Donna is whether or not the trial court erred in finding that the conditions and causes of the children's deprivation were likely to continue and would not be remedied and that the children would suffer serious physical, mental, moral, or emotional harm.

---

1. The notice of hearing was dated 16 Oct 1980.

2. The transcript reflects the following statement by the juvenile court at the second hearing:

   "This is a continuation of docket numbers 1917 and 1918, involving the termination of the parental rights and in the interest of the . . . [B.–P.] children.

   "This matter was previously tried, and at the time the mother in this action asked for additional time. The Court did not wish to give her additional time, at least not that she knew about, so I delayed my ruling and waited until recently to reschedule this matter to see if there could be additional evidence presented as to the status of the parties in this action, so that the evidence that would be presented would be presented without the thought of preparation for another trial. In other words, what we are able to see has

   been accomplished in the last six months has hopefully been done without the impetus of trying to win a trial, but simply to put a life back together and for the lives of these children."

3. Neither Edward nor Bob are pursuing this appeal. Furthermore, Donna states in her brief and at oral argument to this Court that she may never be able to adequately provide for Je. B. [Jeff] because he is severely handicapped. However, it is apparent from the record that it is Ja. B. [James] who is severely handicapped by spinal meningitis and subdural hematoma. Consequently we will treat the statement by Donna as properly referring to James and address this appeal only to the district court order terminating Donna's parental rights as to Terri, Joseph, and John.

■ Our review of decisions under the Uniform Juvenile Court Act (NDCC Ch. 27–20) is broader than in other cases tried to the court and is equivalent to the former procedure of trial de novo. *In Interest of M. N.*, 294 N.W.2d 635 (N.D.1980). The juvenile court's findings are entitled to appreciable weight but this Court is not bound by them. *In Interest of M. N., supra.* While our review is on a de novo basis, we nevertheless must take into account that the trial judge had the opportunity to observe the demeanor of the witnesses whereas we have only the cold transcript before us.

Section 27–20–44, North Dakota Century Code, deals with the termination of parental rights, and provides as follows:

"1. The court by order may terminate the parental rights of a parent with respect to his child if:

a. The parent has abandoned the child;

b. *The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm*; or

c. The written consent of the parent acknowledged before the court has been given.

"2. If the court does not make an order of termination of parental rights it may grant an order under section 27–20–30 if the court finds from clear and convincing evidence that the child is a deprived child." [Emphasis added.]

■ In this instance the juvenile court terminated Donna's parental rights pursuant to NDCC § 27–20–44(1)(b). Before a juvenile court may terminate the parental rights of a parent, under NDCC § 27–20–44(1)(b) the State must establish the following three factors by clear and convincing evidence adduced at the juvenile hearing; (1) the child is a "deprived child" ; (2) the conditions and causes of the deprivation are likely to continue or will not be remedied;

and (3) by reason of the continuous or irremediable conditions and causes, the child is suffering or will probably suffer serious physical, mental, moral or emotional harm. *Interest of R.W.B.*, 241 N.W.2d 546 (N.D. 1976).

Donna does not dispute the juvenile court's finding that the children are deprived. However, she asserts that the juvenile court erroneously found that the cause of the deprivation is likely to be continued and will not be remedied and that by reason thereof the children are suffering or will probably suffer serious physical, mental, or emotional harm.

It cannot be seriously questioned that the evidence adduced at the initial hearing, standing alone, would be sufficient to satisfy the State's burden in a termination proceeding. However, Donna relies almost solely upon the evidence adduced at the second hearing, which she asserts establishes that she has made great strides to stabilize her life and that she will be able to properly raise her children. Thus, she contends that the juvenile court's finding that the causes and conditions of deprivation will continue is erroneous.

Donna points out several factors which she asserts establish that she has stabilized her life to properly care for the children. Among these factors are that she has not returned to the use of alcohol, tobacco, or drugs; she was gainfully employed as a maid in a motel; she was teaching a Sunday school class; and she was described as being reliable and trustworthy, as having a purpose in life, as having stability, and as a person working toward a goal.

■ We have recognized that cases involving the termination of parental rights are difficult. *In Interest of M. N., supra.* Parents have a fundamental, natural right to their children which is of constitutional dimension. *McGurren v. S. T.*, 241 N.W.2d 690 (N.D.1976). However, the parent's right is not absolute. *Interest of R.W.B., supra.* The primary purpose of the Uniform Juvenile Court Act is to protect the welfare of the child, *In re J. V.*, 185 N.W.2d

487 (N.D.1971), and the "best interest of the child" is one factor to be considered in determining the necessity of termination. *In Interest of J. A.*, 283 N.W.2d 83 (N.D. 1979).

In termination proceedings, a showing of parental misconduct without a showing that there is a resultant harm to the child is not sufficient. *Interest of R.D.S.*, 259 N.W.2d 636 (N.D.1977). Evidence of previous abuse and deprivation may be considered in determining whether deprivation is likely to continue and that the child will probably suffer. *In Interest of J. A., supra.* Evidence of past deprivation is not alone enough; it must be prognostic. *Waagen v. R.J.B.*, 248 N.W.2d 815 (N.D.1976).

Because of the procedural posture of the hearing before the juvenile court (*i. e.*, two separate hearings several months apart), it is necessary for us to consider the evidence adduced at both hearings.

Donna asserts that the juvenile court's finding appears to be based on the following: (1) her mental health status is unchanged and she has received no professional assistance; (2) she has demonstrated by infrequent visitation her inadequacy or fear in dealing with her children; (3) she shows continued lack of stability demonstrated by a lack of job skills and anticipated future reliance on public service agencies.

Although these factors which Donna asserts are the basis for the juvenile court's decision may have been part of the court's consideration, a review of the juvenile court's memorandum decision reflects that the primary consideration of the court was the "mother's present and perspective situation and condition vis-a-vis the children's present and future needs."

It is apparent that Donna's emotional stability problems have had a great effect upon her children. It is equally apparent that the children have had a great effect upon Donna's emotional instability problems and have been a source of stress for her. Due to the interrelationship of the foregoing matters, it is extremely difficult to establish a definite cause-effect relationship between Donna's emotional problems and the rearing of the children. However, the extent to which Donna's life stabilized between the time of the two hearings was achieved with the children in foster homes. We note that Olov Gardebring, a clinical psychologist, testified at the first hearing as follows in response to whether or not Donna would ever be able to handle the stress of parenting teenagers:

"It's extremely unlikely. If the diagnosis was only anti-social personality, the experience is with a number of women by the age of 25, particularly, if they are responsible and raise some children, it seems physiologically something changes and they are no longer antisocial. However, there are no indications that with the combination of antisocial and schizophrenic that this is going to happen with ... [Donna]. She has a very long history of many difficulties."

Although the mother's stabilization progress is laudable, we cannot help but agree with the district court that "her difficulties would again be remanifested under the pressures of the care of these children."

We also note that Donna's visitation with her children between the time of the two hearings (March 1980 and December 1980) was at best sporadic. Donna visited Terri and Jeff approximately four times between March and May, and she visited John and James once in April. However, between May and 30 Oct. 1980 there were no visits with any of the children. The visits resumed after notice of the second hearing was given. There are claims that Donna's relationship with the social worker led to the situation. However, the record reflects that Donna was not refused the opportunity to meet with her children and, in fact, during the summer months she did not request any visits with her children. We cannot help but believe that the infrequent visitations demonstrated a fear or inadquacy in dealing with her children.

The evidence at the first hearing, consisting of the social workers' and psychologist's testimony, clearly established that Donna,

at that time, was not capable of withstanding the stress of raising the children. Nor did the evidence indicate that this disability was only of a temporary nature. In the opinion of these witnesses, the deprivation of the children would continue.

The evidence adduced at both hearings established the children's immediate need for a stable environment. In this instance the lack of a stable environment has already resulted in serious emotional and psychological problems for the children. Although evidence of the children's past unstable environment and deprivation is not alone enough to terminate parental rights, we believe that evidence, coupled with the children's present need for a stable environment as well as the fact that Donna's stabilization has been without the stress of raising her children and the fact that she exercised sporadic visitation between the two hearings, establishes that the causes of the deprivation are likely to continue and the children will suffer serious harm as a result.

Based on the foregoing and our de novo review of the testimony adduced at both hearings, giving appreciable weight to the opportunity of the trial judge to observe the demeanor of the witnesses, we conclude that the juvenile court did not err in terminating the parental rights of Donna.

Accordingly, the juvenile court order terminating Donna's parental rights is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.