In the Interest of J. N. R. and D. L. C.

**Daniel RICHTER, Petitioner and Appellee,**

v.

**G. C., Respondent and Appellant,**

**and**

**B. C. and M. B. H., Respondents.**

**Civ. Nos. 10129, 10145.**

Supreme Court of North Dakota.

July 30, 1982.

Kenner, Halvorson & Sturdevant, Minot, for appellant; argued by Carl O. Flagstad, Jr., Minot.

Richard C. Wilkes, Asst. States Atty., Minot, for appellee.

Richard B. Thomas, Minot, guardian ad litem; no appearance.

PAULSON, Justice.

This is an appeal by G. C. from the final order of the Juvenile Court of Ward County dated October 26, 1982, which terminated G. C.'s parental rights to his natural child, D. L. C. We reverse.

G. C. (hereinafter "Gregory," a pseudonym) and B. C. (hereinafter "Barbara," a pseudonym) are the natural parents of D. L. C. (hereinafter "David," a pseudonym). Gregory and Barbara were married in 1979. At the time of their marriage, Barbara already had one child, J. N. R. (hereinafter "Jane," a pseudonym), who was born in May of 1978. Gregory is not Jane's natural father. David was born in June of 1980.

Gregory was born in 1946. At the age of 12 he was placed in the Grafton State School, where he remained until age 20. He has received virtually no formal education, and is unable to read or write. Barbara is a high school graduate, and attended college for two years. Both Gregory and Barbara have been unable to work, and consequently the family has become dependent upon the social service system. At the time of the hearings in these cases the

family's total monthly income from all sources was $572.00.

The testimony elicited at the hearings established that Gregory and Barbara had marital difficulties. The couple bickered and argued on many occasions, with these arguments occasionally escalating into physical violence. Testimony was presented that Gregory and Barbara would throw things while arguing, and on one occasion Gregory hit Barbara on the head with a telephone. The marital difficulties of Gregory and Barbara were apparently complicated by the fact that one of Barbara's former boyfriends, Richard, occasionally lived with the family. In some instances, Richard would stay at Gregory and Barbara's home while Gregory was out of the home for several weeks. Because of the frequent quarrels, the police were called to settle domestic disturbances in the home several times.

Further complicating the family's home life was the fact that Gregory has a problem with alcohol. Most of the family arguments occurred when Gregory had been drinking. In addition, Barbara had problems with prescription drugs, and occasionally would take too many pills and require hospitalization. On one such occasion, the police were called and Barbara had to be taken to the hospital by ambulance.

Several landlords who had rented apartments to the family testified regarding the frequent family quarrels and the unsanitary condition of the family home. This testimony established that the family home was often filthy and unkempt, with paper, clothes, old food, cigarette butts, and beer cans strewn about the house. On one occasion, the family had two large metal garbage cans full of garbage in their living room, and the entire home was infested with cockroaches. Two landlords testified that there were dirty diapers lying around the house and bowel movements on the floor.

On May 20, 1981, a petition for termination of parental rights was filed with the Juvenile Court of Ward County. This petition sought termination of Gregory's rights to David; Barbara's rights to David and Jane; and Jane's natural father's rights to Jane.[1] An adjudicatory hearing was held on June 11, 12, and 23, 1981. On June 23, 1981, the court issued its memorandum opinion finding that the children were deprived. After the adjudicatory hearing, but before the dispositional hearing, Barbara obtained a default divorce from Gregory. A dispositional hearing was held on October 13, 1981, and on October 26 the court entered its order terminating Gregory's parental rights to David. The court did not terminate Barbara's parental rights to the children, and returned the children to her subject to several conditions.

Gregory has appealed to this Court from the juvenile court's order terminating his parental rights. On appeal, Gregory contends that the State failed to establish by clear and convincing evidence that the causes of deprivation are likely to continue and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm.[2] We agree.

Our scope of review of decisions under the Uniform Juvenile Court Act, Chapter 27–20, N.D.C.C., is governed by § 27–20–56(1), N.D.C.C., which provides that review is based upon the files, records, and minutes or transcript of the evidence of the juvenile court. Our review is not limited to a determination of whether or not the juvenile court's findings are clearly erroneous; rather, we are allowed to reexamine the evidence in a manner similar to the former procedure of trial de novo, giving appreciable weight to the findings of the juvenile court. § 27–20–56(1), N.D.C.C.; *In Interest of L. N.*, 319 N.W.2d 801, 803 (N.D. 1982); *In Interest of S. W.*, 290 N.W.2d 675,

---

1. The juvenile court held that Jane had been abandoned by her natural father, and ordered termination of his parental rights.

2. Gregory has also raised other issues. Because we reverse on the issues discussed above, we find it unnecessary to discuss the other issues raised by Gregory.

677 (N.D.1980); *In Interest of R. H.*, 289 N.W.2d 791, 793 (N.D.1980).

The juvenile court terminated Gregory's parental rights pursuant to § 27–20–44(1)(b), N.D.C.C., which provides:

"27–20–44. *Termination of parental rights.—*

"1. The court by order may terminate the parental rights of a parent with respect to his child if:

\* \* \* \* \* \*

"b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; . . . ."

■ Before the juvenile court may terminate the parental rights of a parent pursuant to § 27–20–44(1)(b), N.D.C.C., the State must establish each of the following three factors by clear and convincing evidence:

1) the child is a "deprived child";

2) the conditions and causes of deprivation are likely to continue or will not be remedied; and

3) by reason of the continuous or irremedial conditions and causes, the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm.

*Kleingartner v. D. P. A. B.*, 310 N.W.2d 575, 578 (N.D.1981).

We agree with Gregory that the State failed to establish by clear and convincing evidence that the conditions and causes of deprivation in this case are likely to continue or will not be remedied. In its memorandum opinion of June 23, 1981, the juvenile court pointed to the following combination of factors to support its finding that the children were deprived: the fighting between Gregory and Barbara; the filthy living conditions in the family home; Barbara's drug problems; and Gregory's criminal record and alcohol problems.

The evidence introduced at the dispositional hearing indicated that all of the above factors except the last have been remedied. Gregory and Barbara have divorced, thereby presumably putting an end to the marital quarrels of the couple. The evidence indicates that, following her divorce, Barbara has greatly improved her life. She has been keeping her home clean and has been taken off of the medications which were causing difficulties for her. By the terms of the divorce, Barbara has custody of the children and Gregory has been denied visitation rights.

The only factors cited by the juvenile court which have not been eradicated by the divorce and Barbara's subsequent improvements are Gregory's criminal record and alcohol problems. Gregory has a lengthy criminal record, primarily of traffic-related offenses. In addition, Gregory's record indicates incidents of detoxification, window peeping, petty larceny, destruction of property, disorderly conduct, fleeing a police officer, and reckless endangerment.

■ We have previously held that evidence of the parent's background, including previous incidents of abuse and deprivation, may be considered in determining whether deprivation is likely to continue. *Kleingartner v. D. P. A. B.*, *supra*, 310 N.W.2d at 579; *In re H.*, 206 N.W.2d 871, 875 (N.D. 1973). However, evidence of past deprivation is not alone enough; there must also be prognostic evidence. *Kleingartner v. D. P. A. B.*, *supra*; *In re H.*, *supra*. In the case of *In re H.*, *supra*, we concluded that evidence of a 16-year-old mother's turbulent childhood and difficulties with the juvenile authorities supported a finding that her child was a "deprived child," even though the mother had at no time had custody and control of the child. We went on to hold, however, that such evidence was not sufficient to support a termination of the mother's parental rights. We remanded the case for further proceedings, with the suggestion that expert witnesses interview the mother and testify as to her present and

future ability to care for her child.[3] *In re H., supra,* 206 N.W.2d at 875–876. *See also Kleingartner v. D. P. A. B., supra,* 310 N.W.2d at 579–580.

■ Although we deplore Gregory's constant failure to conform his conduct to the requirements of the law, we do not believe that the mere fact that one has a history of difficulties with the law, by itself, clearly and convincingly establishes continuing deprivation. *See In Interest of R. D. S.,* 259 N.W.2d 636, 638–639 (N.D.1977). The State has failed to present any evidence which is prognostic in nature. We especially note that there has been no evidence presented whatsoever to indicate that Gregory has committed these offenses in the presence of the children. Furthermore, there is no evidence that Gregory has ever physically or verbally abused the children.

Based upon the foregoing, we conclude that the State has failed to establish by clear and convincing evidence that the conditions and causes of deprivation are likely to continue or will not be remedied.

■ We also agree with Gregory that the State has failed to establish by clear and convincing evidence that, as a result of the deprivation, David is suffering or will probably suffer serious physical, mental, moral, or emotional harm. A showing of parental misconduct without a showing that there is a resultant harm to the child is not sufficient for termination of parental rights. *Kleingartner v. D. P. A. B., supra,* 310 N.W.2d at 579; *In Interest of R. D. S., supra,* 259 N.W.2d at 638. The evidence indicates that David was a healthy, normal one-year-old child at the time of the hearings in this case. The only testimony regarding possible harm to David came from Dr. Michael Holland, David's pediatrician, and Dr. Paul Jennings, a clinical psycholo-

gist who evaluated David. Dr. Holland testified that he had a "vague feeling that maybe there is something wrong" with David's rate of development. When asked to point to a specific observation, Dr. Holland could only state that David was not as fearful of strangers as were most children his age. As a result of this observation, Dr. Holland requested that David be tested for the Infant Stimulation Program. Three separate tests were conducted, all indicating normal development, and it was determined that David did not need to continue in the program.

A letter prepared by Dr. Jennings provides the only other evidence regarding David's emotional development. His conclusions were based upon his contact with the children, an interview with the foster mother, and evaluation reports on the children. Although Dr. Jennings expressed concern that Gregory and Barbara were not fully addressing the children's developmental needs, he concluded that the children were happy, healthy, and well adjusted, and that the children had not been significantly damaged as a result of living with Gregory and Barbara.

This was the only evidence presented regarding emotional harm to the children. When combined with the fact that Gregory and Barbara have divorced, we conclude that this evidence falls far short of establishing clearly and convincingly that David has suffered or will probably suffer serious physical, mental, moral, or emotional harm if Gregory's parental rights are not terminated.

The order of the juvenile court terminating Gregory's parental rights is reversed.[4]

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, J., disqualified.

---

3. We do not mean to suggest, however, that expert testimony will be required in every case to prove continuing deprivation. For example, in a case involving a parent with a lengthy history of abusing children, without evidence of change, the court may be able to conclude that such deprivation would be likely to continue without expert testimony to establish that fact.

4. We note that the juvenile court held inadmissible, on grounds of privilege, testimony from various doctors, psychotherapists, and social workers. The State has not appealed from the court's refusal to admit this evidence, and the issue is therefore not properly before this Court. We note that our decision in this case is rendered entirely on the record as presented on appeal.