In the Interest of C.S., J.S. and A.S., Children.

Bernard J. HAUGEN, Juvenile Supervisor for Ransom County, Petitioner and Appellee,

v.

C.S., J.S., and A.S., children; R.S., father of said children; Jeffrey K. Leadbetter, Guardian ad Litem of said children; and Marvin Schaap, Director of Ransom County Social Services Board, Custodian of said children, Respondents,

S.S., mother of said children, Respondent and Appellant.

Civ. No. 870182.

Supreme Court of North Dakota.

Jan. 12, 1988.

Wayne P. Jones, Lisbon, for petitioner and appellee.

Jeffrey Keith Leadbetter, guardian ad litem, Lisbon, for respondents. Submitted on brief.

R.S., respondent, pro se.

Hal S. Stutsman, Wahpeton, for respondent and appellant.

MESCHKE, Justice.

S.S. (hereinafter Mary, a pseudonym), mother of three children, appeals from a

juvenile court judgment terminating her parental rights. We affirm.

On December 12, 1985, a year before the termination hearing, the juvenile court concluded that the children were deprived. The court found that Mary and the children's father, R.S. (hereinafter Allen, a pseudonym),[1] had physically and emotionally abused and neglected the children and that the parents, even with the assistance of social service personnel, were unable to adequately care for the children. The court placed legal custody of the children with the Director of the Ransom County Social Service Board and ordered that the children be allowed to remain in their home only if Mary agreed to follow a list of twenty-seven recommendations about care of the home and children.

Two weeks after this deprivation order, Mary went to California. Since Allen, a truck driver, was seldom home to help with the children, social service personnel assisted Mary in leaving the children in a foster home. Mary hoped to have the children sent to California to live with her after she found a home and job. During her months in California she had little contact with the children and was separated from Allen. In June 1986, Mary returned from California to live in North Dakota with Allen at the Grand Forks Mission.

On September 8, 1986, the Ransom County juvenile supervisor petitioned to terminate Mary and Allen's parental rights. Following a termination hearing on December 9, 1986, the juvenile court granted the petition. At that time, Thomas was six, James was four, and Greg was two years old (the children's names are also pseudonyms).

Before a juvenile court may terminate parental rights the state must establish by clear and convincing evidence, under Section 27–20–44(1)(b), N.D.C.C., that the children are deprived, that the causes and conditions of the deprivation are likely to con-

tinue and not be remedied, and that because of the deprivation the children are suffering, or will probably suffer in the future, serious physical, mental, or emotional harm. *In Interest of A.M.C.*, 391 N.W.2d 178 (N.D.1986). Mary asserts on appeal that the state failed to establish by clear and convincing evidence that the deprivation of her children would likely continue.

Our review of decisions by the juvenile court under the Uniform Juvenile Court Act is equivalent to the procedure of trial de novo. *In Interest of R.M.B.*, 402 N.W. 2d 912 (N.D.1987). Although the juvenile court's findings are entitled to appreciable weight, we are not bound by them. *In Interest of A.M.C., supra.*

Mary was evaluated by Russell Blomdahl, a clinical psychologist with the Northeast Human Service Center in Grand Forks. Blomdahl concluded:

"She [Mary] has a long term history of antisocial behavior which includes neglect and abuse of her children.... [I]t is felt that [Mary's] behavior of the past will most likely continue to be present during the future.... It appears that she has the ability to care for her home appropriately and her children; however, from all past records it appears that she does not have the initiative and the motivation to follow through with what is necessary.... Considering the history of the functioning of this family the prognosis for the three children to reside with [Allen and Mary] and not be in a situation of neglect is guarded."

Mary was also evaluated by Dr. Res Psac Ascano, a forensic psychologist and Director with the St. Francis Medical Center in Breckinridge, Minnesota. Dr. Ascano concluded that Mary has a narcissistic personality disorder, meaning that she is self-centered and self-indulgent and puts her needs before any other. He opined that Mary is a poor candidate for any psy-

---

1. The juvenile court also terminated the parental rights of the children's father, R.S., but he did not appeal.

chotherapeutic rehabilitation because of her own history of being abused and neglected as a child and because of her record of substance abuse including alcohol, PCP (angel dust), and cocaine. Dr. Ascano testified that the eldest son, Thomas, has significant emotional problems growing out of his relationship with his mother and that, in Dr. Ascano's opinion, Thomas has been subjected to some sexual abuse. Dr. Ascano also testified that, if Thomas were returned to live with Mary, he would likely be "subject to future trauma and psychological victimization" and that it is unlikely that Mary could provide care adequate for Thomas to recover from emotional damage already endured.

Dr. Ascano's forecast for Mary's rehabilitation was pessimistic, in view of Mary's own history of child abuse and neglect, her record of substance abuse, and her test results which suggested that she was not a promising candidate for psychotherapy. Dr. Ascano concluded that the clinical evidence made a more optimistic prognosis "pollyannish."

Two Ransom County social workers, Terry Brown and Debra Fadness, who had numerous contacts with Mary and the children, testified that they did not believe that Mary was capable of being a good parent or that she would be able to establish a beneficial environment for the children.

Hal Hynds, a social worker with the Welfare Department in Bakersville, California, repeatedly contacted Mary for a home evaluation about reuniting the children with her in California. Mary cancelled or missed four of five appointments with Hynds. Hynds reported that placement of the children with Mary would not be appropriate because her residence was not up to "community standards" and because her failures to meet with him indicated that "she is not sufficiently interested in reunification."

From this evidence, the juvenile court concluded that these minor children had been repeatedly abused and neglected while residing with Mary and Allen and

that the potential of the parents' remedying the situation was extremely poor. The court also concluded that neither parent would be able to provide a loving and stable environment for the children in the near future.

Nevertheless, Mary asserts that while she and Allen have lived at the Grand Forks Mission they have undertaken a "Christian lifestyle" and she has not used alcohol or bad drugs. Mary argues that these positive changes show that she and Allen will be able to provide an adequate and stable home for the children in the near future.

■ These children need stable, nurturing surroundings now, not at some uncertain future time, to heal from past abuse and neglect. Terminating parental rights is never easy, but a brief period of improvement in the parents' lifestyles cannot forestall termination when the evidence clearly shows, as in this case, that the causes and conditions of the deprivation are likely to continue. *See In Interest of D.S.*, 325 N.W.2d 654 (N.D.1982); *Kleingartner v. D.P.A.B.*, 310 N.W.2d 575 (N.D. 1981). While the improvement in conduct by Mary and Allen is praiseworthy, we agree with the trial court's assessment. There is clear and convincing evidence that the causes and conditions of the children's deprivation are likely to continue and not be remedied.

■ Mary also claims that the juvenile court erroneously admitted evidence about the children's adoptability. During the direct examination of social worker Terry Brown, counsel for the state asked whether the foster parents were interested in adopting the children. There was no objection to the question. Brown responded that, because of their health and age, the foster parents would not adopt. Later in the direct examination, counsel for the state also asked Brown whether he had asked any placement agencies about whether the children would be adoptable. Mary's counsel objected to this question, and the objection

was sustained. While cross-examining Brown, Mary's attorney reopened the subject by asking whether the foster parents would adopt the children if Mary and Allen's parental rights were terminated. On redirect examination, counsel for the state attempted to clarify by asking whether the children were adoptable. Mary's counsel objected to the question, but the trial court overruled the objection.

The trial court recognized that adoptability, although important to disposition, was not relevant to termination. However, the court allowed the testimony because the subject was brought up by Mary's counsel during cross-examination. Redirect examination is to explain and clarify testimony on cross-examination. Evidence to explain testimony on cross-examination is admissible on redirect even though not admissible earlier. *State v. McClelland*, 72 N.D. 665, 10 N.W.2d 798, 804 (1943). We hold that the trial court did not abuse its discretion. Rule 611, N.D.R.Ev.

■ Mary also argues that the juvenile court did not seriously consider placing the children with her mother, as an alternative. We cannot conclude that the maternal grandmother's home was not seriously considered. Dr. Ascano's report is relevant and revealing:

> "[Mary's] mother is a 'problem-social drinker' and this patient [Mary] grew up without a father, since her parents divorced when she was very young. [Mary] has two brothers and four sisters. She mentioned being a victim of physical abuse by her mother. Her mother had the tendency of hitting her with wooden spoons, spatula, clothes hanger or what ever [sic] she could get her hands on to hit this patient. The history of abuse began at age ten until sixteen when she moved out. She described as having no emotional bonding with her mother and did not identify or relate with her mother during her adolescent years. Even though she did not grow up with her father she felt closer with him emotionally."

When the children were found to be deprived in December 1985, the juvenile court ordered the Director of the Ransom County Social Service Board to arrange for a study of the maternal grandmother's home "in contemplation of placing one or more of said children in [the grandmother's] home." The home study was never done, because Mary agreed to place the children in a foster home when she moved to California. Upon returning to North Dakota she did not request that the home study be conducted. We believe that Mary, by her actions, waived any objection about the Director's failure to study the grandmother's home.

■ The juvenile court determined that, considering her age and health, the maternal grandmother could not provide an adequate home for the children. Giving appreciable weight to its findings, we conclude that the juvenile court did not err in rejecting placement with the maternal grandmother as an alternative to termination of parental rights.

The judgment of the juvenile court is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.