387 N.W.2d 499 (1986)
In the Interest of V.J.R., A Child
Julie VERNON, Petitioner and Appellee,
v.
K.R., a.k.a. K.L., Respondent and Appellant, and
Kent Morrow, as Guardian ad Litem for the above-named child, Respondent and Appellee.
Civ. No. 11075.
Supreme Court of North Dakota.
May 15, 1986.
*500 Jo Louise Bullis, Asst. State's Atty., Watford City, for petitioner and appellee.
Harms & Leier, Williston, for K.R., a.k.a. K.L., respondent and appellant; argued by Gary W. Horst.
Kent Morrow, pro se.
LEVINE, Justice.
K.R., natural mother of V.J.R., appeals from the juvenile court judgment which terminated her parental rights. We affirm.
This case arises from a mother's (K.R.) voluntary placement of her two-year-old child (V.J.R.) in the custody of Social Services because of her inability to care for the child. Over the ensuing two and one-half years, the child resided in two foster homes with the mother maintaining only intermittent contact with the child and Social Services.
A petition for involuntary termination of the mother's parental rights was filed and upon finding the child to be deprived pursuant to North Dakota Century Code § 27-20-44, the McKenzie County juvenile court terminated K.R.'s parental rights. On appeal K.R. asserts: (1) there is insufficient evidence to sustain the judgment; (2) the judgment is against public policy; and (3) the standard of proof for termination should be something more than clear and convincing evidence.

1. Sufficiency of the Evidence
In order to terminate parental rights under NDCC § 27-20-44(1)(b) the State must prove by clear and convincing evidence:
(1) the child is deprived;
(2) the conditions and causes of deprivation are likely to continue or will not be remedied; and
(3) because of the continuous or irremedial conditions and causes, the child is suffering and will probably suffer serious physical, mental, moral or emotional harm. In Interest of J.K.S., 356 N.W.2d 88 (N.D. 1984).
The juvenile court concluded the State met its burden of proving these three elements. Our review of the juvenile court decision is based on the files, records, minutes or transcripts presented to it. While we are not bound by the juvenile court findings, but instead conduct a trial de novo-like examination of the evidence, we do, nevertheless, recognize the juvenile court's advantage to assess the demeanor of witnesses. Accordingly, we give its findings appreciable weight. In Interest of J.K.S., supra.
As to the first element, that of deprivation, the juvenile court determined that V.J.R. was a deprived child because of K.R.'s inability to provide the care necessary for V.J.R.'s mental or emotional health or morals. NDCC § 27-20-02(5)(a). K.R.'s lack of child rearing skills is attributable, at least in part, to a psychological disorder which rendered K.R. unable to sustain a consistent commitment to V.J.R.'s welfare. In fact, K.R. conceded that she was unable to adequately care for V.J.R. and that consequently he was a deprived child. There is nothing in the record which leads us to disagree.
K.R. assails, however, the juvenile court's finding of clear and convincing evidence of the second element, that the conditions and causes of V.J.R.'s deprivation would not be remedied but are likely to continue.
The juvenile court found:
"3. The causes of [V.J.R.'s] deprivation are likely to continue and not be remedied. The Court has made a determination based upon the testimony of the social worker and psychologist that there is a negative prognosis for [K.R.'s] improvement. That [K.R.] has failed to take advantage of and utilize the numerous services offered her by Social Services to develop the skills necessary to be an adequate parent."
There was clear and convincing evidence to support this finding. Dr. Patrick Mills, a psychologist who had interviewed both K.R. and V.J.R., testified that even if he *501 assumed K.R.'s dedication to treatment for her psychological disorder, an assumption he was hesitant to make, a minimum of two years' therapy was necessary for any significant improvement. Dr. Mills concluded that it would not be beneficial for V.J.R. to remain in foster care for the time necessary to treat K.R.'s disorder. We have held that this type of prognosis is a relevant factor in finding that deprivation is likely to continue. Interest of R.W.B., 241 N.W.2d 546 (N.D.1976).[1]
Julie Vernon, the social worker assigned to K.R. for the past two and one-half years, also testified that in her opinion K.R.'s inability to properly care for V.J.R. was likely to continue. Vernon attested that K.R. visited V.J.R. on an inconsistent basis and only sporadically attended counseling sessions. While lack of parental cooperation by itself is insufficient, see In Interest of J.A., 283 N.W.2d 83 (N.D.1979), it is pertinent in finding that deprivation will continue. McBeth v. J.J.H., 343 N.W.2d 355 (N.D.1984).
We conclude that there was clear and convincing evidence that the causes of V.J. R.'s deprivation are likely to continue in the future.
There is also clear and convincing evidence of the third element, that V.J.R. will probably suffer serious emotional harm by reason of the continued deprivation. The evidence convincingly establishes that V.J.R. cannot presently be reunited with K.R. and that it would be detrimental for him to remain indefinitely in foster care. It is obvious that V.J.R. does and will continue to suffer deprivation unless K.R.'s parental rights are terminated so that V.J.R. may be adopted.
We hold there was clear and convincing evidence of the three prerequisites for termination of K.R.'s parental rights.

2. Public Policy
K.R. argues that terminating her parental rights is contrary to public policy because she acted in V.J.R.'s best interest in voluntarily relinquishing his temporary custody to Social Services. K.R. asserts that termination of her parental rights "punishes" her for such commendable conduct and thus violates public policy.
The primary purpose of the Uniform Juvenile Court Act, NDCC ch. 27-20, is to protect the child's welfare. In Interest of J.K.S., supra. While we understand that K.R. is likely to suffer, or in her words "be punished," by losing permanent custody of her child, her parental rights cannot be enforced to the serious detriment of V.J. R.'s welfare. McBeth v. J.J.H., supra.
K.R. argues that terminating her parental rights contravenes public policy because it will deter other parents from voluntarily surrendering temporary child custody to Social Services, despite its being in the child's best interest. See In re J.V., 185 N.W.2d 487 (N.D.1971). While there is credence to this argument, we conclude it will not advance public policy to sacrifice V.J. R.'s welfare for the sake of encouraging parents to act in their children's best interest.

3. Burden of Proof
K.R. acknowledges that the clear and convincing evidentiary standard applicable to termination proceedings, In Interest of J.K.S., supra, accords with the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). However, she urges us to follow the lead of the Minnesota Appellate Court in Matter of Welfare of J.J.B., 369 N.W.2d 593 (Minn.App.1985), and terminate parental rights only for "grave and weighty reasons."
*502 K.R.'s reliance on Matter of Welfare of J.J.B. is misplaced at best.[2] Clear and convincing evidence is the standard of proof in Minnesota termination proceedings. Minn. Stat. § 260.241(1); Matter of Welfare of W.R., 379 N.W.2d 544 (Minn.App.1985). The "grave and weighty reasons" language does not create a new and higher level of proof. It is simply a variation of the fundamental principle that parental rights are not to be lightly abrogated. With this proposition we are in full accord. Indeed, we have used the "grave reason" language ourselves. Bjerke v. D.T., 248 N.W.2d 808, 811 (N.D.1976).
Accordingly, the judgment of the juvenile court is affirmed.
ERICKSTAD, C.J., VANDE WALLE and MESCHKE, JJ., and PEDERSON, Surrogate Justice, concur.
PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.
NOTES
[1] K.R. also argues that because her emotional disorder was not diagnosed early enough for her to undergo necessary rehabilitative treatment, she should be given that opportunity prior to termination. In light of the psychologist's opinion that such treatment would take at least two years and would be of doubtful efficacy, we reject that argument. We note also that it was not raised at the trial court level. Nor was there evidence of the agency's lack of diligence in promoting the reunion of mother and child. See Bjerke v. D.T., 248 N.W.2d 808 (N.D.1976); In Interest of J.A., 283 N.W.2d 83 (N.D.1979).
[2] On February 14, 1986, Matter of Welfare of J.J.B. was reversed by the Minnesota Supreme Court, which is to issue an opinion in the case. Matter of Welfare of J.J.B., 381 N.W.2d 442 (Minn.1986).