In the Interest of J.A.L., A Child.

Addie JACOBSON, Petitioner and Appellee,

v.

J.A.L., a child; D.L., Mother; and his Guardian ad Litem, LaRoy Baird, Attorney, Respondents and Appellants.

Civ. No. 880112.

Supreme Court of North Dakota.

Dec. 6, 1988.

Patricia L. Burke (argued), State's Atty., Bismarck, for petitioner and appellee.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for respondents and appellants, argued by William D.

Schmidt; appearance by LaRoy Baird III, Guardian ad Litem.

LEVINE, Justice.

D.L. (hereinafter Donna, a pseudonym), the mother of the minor child J.A.L. (hereinafter John, a pseudonym), appeals from a juvenile court order terminating her parental rights. We affirm.

John was born on March 7, 1987 to Donna, who is mentally retarded. John has been diagnosed as having cerebral palsy. On March 23, 1987, the Burleigh County juvenile court issued an emergency temporary order placing John in the temporary custody of Burleigh County Social Services. Both mother and child were then placed in the foster home of Delores Roe on April 7, 1987. Roe was licensed for adult and child foster care and provided foster care to both Donna and John. Roe attempted to train Donna in parenting skills. She also assisted and supervised Donna in self-care and in the care of John.

Burleigh County Social Services filed a petition for termination of Donna's parental rights and a hearing was held on February 11, 1988. The juvenile court terminated parental rights after finding that John was a "deprived child" because of Donna's present inability to provide even minimal care, and that Donna's condition would not improve. Donna appealed.

Donna contends that: (1) the juvenile court erred in terminating her parental rights because the evidence was not sufficient to establish that the conditions of deprivation of the child are likely to continue; (2) a developmentally disabled person such as Donna should be afforded an opportunity to properly care for her child through "appropriate services" as required by NDCC § 25–01.2–02; and (3) the Uniform Juvenile Court Act, NDCC ch. 27–20, violates the equal protection clause and the due process clause of the United States Constitution and the Constitution of North Dakota.

Our statute governing the termination of parental rights is part of the Uniform Juve-

nile Court Act, codified at NDCC ch. 27–20. In order for the court to terminate parental rights, the State must show by clear and convincing evidence that: (1) the child is a "deprived child"; (2) the conditions and causes of deprivation are likely to continue or will not be remedied; and (3) by reason of the continuous and irremediable conditions and causes, the child is suffering or will probably suffer serious physical, mental, moral or emotional harm. *See* NDCC § 27–20–44; *Bernhardt v. K.Q.*, 423 N.W.2d 803 (N.D.1988) [citing *In Interest of J.N.R.*, 322 N.W.2d 465, 468 (N.D.1982)]. Donna argues that the State failed to establish by clear and convincing evidence the second prerequisite for terminating parental rights, namely, that the conditions and causes of deprivation are likely to continue or will not be remedied.

■ In reviewing decisions of the juvenile court under NDCC ch. 27–20, we examine evidence in a manner similar to trial de novo. *In Interest of C.S.*, 417 N.W.2d 846, 847 (N.D.1988). Our review is based upon "files, records, and minutes or transcript of the evidence of the juvenile court." NDCC § 27–20–56(1). We give appreciable weight to the juvenile court's findings and recognize the trial court's opportunity to observe the demeanor of witnesses, but we are not bound by the juvenile court's findings. *See In Interest of A.M.C.*, 391 N.W.2d 178, 179 (N.D.1986); *In Interest of J.S.*, 351 N.W.2d 440, 441 (N.D.1984).

The court found that the conditions of deprivation were likely to continue because of Donna's incapacity to function independently for herself or her child, and her inability to "consistently feed, bathe or discipline" John. Relying on expert testimony, the court concluded that Donna's condition would not improve. The court also found that John is a special needs child with cerebral palsy and that his needs will increase.

■ There is clear and convincing evidence to support the juvenile court's finding that the conditions and causes of deprivation are likely to continue. Dr. Steven Rosenberg, a clinical psychologist who testified on behalf of Donna, concluded Donna was mildly retarded, with daily living skills comparable to a seven-year-old child. Dr. Rosenberg stated that John is at risk in Donna's care alone and that "there will always be a need for supervision." He could not predict whether the need for supervision would decrease, but concluded that supervision would be needed "forever."

Two psychiatrists and a clinical psychologist who evaluated Donna each testified that Donna would never be able to parent the child without constant supervision. They concluded that although a person with an IQ of 53 may be able to learn some rudimentary parenting skills such as feeding and diapering the child, Donna has not shown any indication that she is trainable. All predicted her skills will not improve.

Delores Roe, the foster mother, testified that she believed that Donna required constant supervision to parent John and that Roe provided such constant supervision. She testified that at least daily since April 1987 she taught Donna skills such as diapering and mixing formula and Donna was not able to perform these skills adequately. Roe testified that there was no improvement in Donna's parenting skills and that John needed physical and occupational therapy at home, which Donna was unable to perform.

■ Prognostic evidence may be relied upon in termination proceedings. *In re H.*, 206 N.W.2d 871, 873 (N.D.1973). Prognostic evidence must show that the parent is presently unable to supply physical and emotional care for the child, with the aid of available social agencies if necessary, and that this inability of a parent will continue for time enough to render improbable the successful assimilation of the child into a family if the parent's rights are not terminated. *Interest of R.W.B.*, 241 N.W.2d 546, 552 (N.D.1976).

The evidence clearly and convincingly supports the finding that Donna is present-

ly unable to adequately provide physical and emotional care for John, and furnishes the basis for a reasonable prediction that Donna's parenting skills will not improve and that constant supervision will always be needed for her to parent John. *See In Interest of J.S., supra.*

This is not a case where supplemental services provided for a reasonable time would assist the parent in maintaining fundamental parental rights while protecting the welfare of the child. To the contrary, it is clear that constant supervision, that is, supervision at all times and on a permanent basis, is necessary to maintain Donna's parental rights. We do not believe that such extravagant assistance is required by law.

■ Donna contends that a developmentally disabled person is entitled to appropriate services under NDCC § 25–01.2–02 to enable her to properly care for her child, and the juvenile court erred in not applying the statute. NDCC § 25–01.2–02 provides:

"All persons with developmental disabilities have a right to appropriate treatment, services, and habilitation for those disabilities. Treatment, services, and habilitation for developmentally disabled persons shall be provided in the least restrictive appropriate setting."

The essence of Donna's argument is that "appropriate services" means constant supervision in a foster home for both Donna and her child if that is what it takes to enable her to act as a parent. We agree with the juvenile court that providing foster care for both Donna and John in order to enable Donna to maintain her parental rights is an extreme not required by the law. Even if chapter 25–01.2 does apply to parental termination proceedings, an issue we need not decide, the chapter does not entitle Donna to services that consist of constant supervision in order for her to parent the child.

■ An amicus curiae brief filed with this court by the North Dakota Protection and Advocacy Project raises the issue of the constitutionality of the Uniform Juve-

nile Court Act, codified at NDCC ch. 27–20. Donna relies on the brief of the amicus. We will not consider an issue raised by an amicus when that issue was not raised in the lower court. *See Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502, 503 (N.D. 1987). *Cf. State v. Slapnicka*, 376 N.W.2d 33, 36 (N.D.1985).

Accordingly, we affirm.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.