In the Interest of A.M.A., A Child.

In the Interest of T.N.A., A Child.

In the Interest of N.D.A., A Child.

Jeanne R. SEXTON, Petitioner
and Appellee,

v.

A.M.A., T.N.A., and N.D.A., Children,
Respondents and Appellees.

Appeal of C.R. a/k/a C.R.A., Mother of
said Children, Respondent
and Appellant,

and

L.D.A., Father of said
Children, Respondent,

In re B.R. and M.R., Maternal Grand-
parents of said Children,
Respondents and Appellees.

Civ. No. 880260.

Supreme Court of North Dakota.

April 19, 1989.

Gilje, Greenwood & Dalsted, Jamestown, for respondent and appellant; argued by Kenneth L. Dalsted.

Stephen M. McLean (argued), Oakes, guardian ad litem for respondents and appellees, A.M.A., T.N.A., and N.D.A., children.

Robin Huseby, States Atty., Valley City, for petitioner and appellee.

Ronald E. Goodman, Oakes, for respondents and appellees, B.R. and M.R., maternal grandparents of said children.

ERICKSTAD, Chief Justice.

C.R. also known as C.R.A. (hereinafter "Cindy," a pseudonym), the mother of the minor children A.M.A. (hereinafter "Annette," a pseudonym), T.N.A. (hereinafter "Tina," a pseudonym), and N.D.A. (hereinafter "Neal," a pseudonym), appeals from the judgment entered by the juvenile court on June 21, 1988, terminating her parental rights. We affirm.

On February 5, 1986, Dickey County Social Services received a report of suspected child abuse and removed Neal, Tina, and Annette from the home of Cindy and her husband, the father of the children, L.D.A. (hereinafter "Loren," a pseudonym), via an emergency court order. A deprivation petition was filed on behalf of the children and

on March 7, 1986, both parents signed a stipulation acknowledging that the children were deprived due to the parents' mistaken and inappropriate physical discipline. At that time, Neal was three and one-half (3½) years old, Tina was two and one-half (2½) years old, and Annette was eight (8) months old. The two older children showed signs of abuse.

The maternal grandparents of the children, B.R. and M.R. (hereinafter "Bob" and "Martha," pseudonyms), filed a motion for joinder as parties under Rule 19(a) of the North Dakota Rules of Civil Procedure and also a motion for grandparental visitation under section 14-09-05.1 of the North Dakota Century Code. The juvenile court issued an order granting the motions on May 21, 1986.

Cindy and Loren moved to Minnesota in the spring of 1986. The children remained in foster care in Dickey County until June of 1986 when they were transferred to foster care in Minnesota. On December 4, 1986, the juvenile court ordered that the children be removed from the foster home where they were residing in Minnesota and be transported back to North Dakota. The children were then placed in temporary custody with their grandparents, Bob and Martha.

A petition for termination of parental rights was filed on November 23, 1987. After the February 2, 1988, hearing on the petition to terminate, the juvenile court determined that there was clear and convincing evidence to terminate the parental rights of Loren and Cindy. Cindy has appealed.

Our statute governing the termination of parental rights is part of the Uniform Juvenile Court Act, codified in chapter 27-20 of the North Dakota Century Code. The purpose of the Uniform Juvenile Court Act is to "provide for the care, protection, and wholesome moral, mental, and physical development of children...." Section 27-20-01(1), N.D.C.C.; *see also In Interest of J.K.S.*, 356 N.W.2d 88, 93 (N.D.1984). The Legislature has noted a strong preference for parental guardianships. *McGurren v. S.T.*, 241 N.W.2d 690, 695 (N.D.1976).

Chapter 27-20, N.D.C.C., should be construed to achieve its purposes in a family environment whenever possible, "separating the child from his parents only when necessary for his welfare or in the interest of public safety." Section 27-20-01(3), N.D.C.C.; *McGurren v. S.T., supra*, 241 N.W.2d at 695.

The grounds for termination of parental rights "must rest upon the attitude, conduct, ability, and such other matters relating to the parent's duties, responsibilities, and care for the child which may be, and frequently are, collectively referred to as 'fitness.'" *McGurren v. S.T., supra*, 241 N.W.2d at 697. In order for the court to terminate parental rights, the State must show by clear and convincing evidence that: (1) the child is a "deprived" child; (2) the conditions and causes of deprivation are likely to continue or will not be remedied; and (3) by reason thereof, the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm. *See* section 27-20-44, N.D.C.C.; and *In Interest of L.J. and R.J.*, 436 N.W. 2d 558 (N.D.1989).

In reviewing decisions of the juvenile court under chapter 27-20, N.D.C.C., we examine the evidence in a manner similar to a trial de novo. *In Interest of J.A.L.*, 432 N.W.2d 876, 878 (N.D.1988). Our review is based upon "files, records, and minutes or transcript of the evidence of the juvenile court." Section 27-20-56(1), N.D.C.C. We give appreciable weight to the juvenile court's findings and recognize the trial court's opportunity to observe the demeanor of witnesses, but we are not bound by those findings. *Interest of J.A.L., supra*, 432 N.W.2d at 878.

## DEPRIVATION

The threshold question is whether or not the children are deprived. *In Interest of J.K.S., supra*, 356 N.W.2d at 91. Under section 27-20-02(5)(a), N.D.C.C., a deprived child is one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's

physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian."

The juvenile court determined that the three minor children suffered serious physical and emotional abuse and neglect at the hands of their parents. Further, Cindy signed a stipulation on March 7, 1986, acknowledging that the children were deprived as a result of their being physically abused by both parents, and therefore cannot dispute the initial deprivation. Our review of the record discloses repeated incidents in which Neal and Tina were beaten by their parents with a wooden spoon or stick until they were bruised. Tina's diaper was even removed so as not to interfere with the beatings. Neal repeatedly mentioned to his therapist that his daddy kicked him down the stairs, which Loren admitted he had done because he was angry with Cindy. The evidence in the record is clear and convincing that the children were deprived and that this deprivation was not primarily due to lack of financial resources.

## CONTINUING OR UNREMEDIED DEPRIVATION

■ Evidence of previous abuse and deprivation may be considered in determining whether or not the deprivation is likely to continue and that the child will probably suffer. *In Interest of J.A.*, 283 N.W.2d 83 (N.D.1979). Evidence of past deprivation is not alone enough; it must be prognostic. *Waagen v. R.J.B.*, 248 N.W.2d 815 (N.D. 1976). Prognostic evidence must show that the parent is presently unable to supply physical and emotional care for the child, with the aid of social services if necessary, and that this inability of a parent will continue for time enough to render improbable the successful assimilation of the child into a family if the parent's rights are not terminated. *In Interest of J.A.L., supra*, 432 N.W.2d 876; *see also In Interest of R.M.B.*, 402 N.W.2d 912 (N.D.1987).

The juvenile court determined that serious physical and emotional abuse is likely to continue if parental rights are not terminated.

The March 1986 stipulation, signed by both parents, required them to attend parenting classes, to submit to psychological evaluations, and "at their earliest convenience and as a condition of the return to them of the children show means of providing adequate support for the children."

■ Although the county social services in Minnesota did not send Dickey County Social Services regular progress reports, both parents testified at the termination hearing that they had not completed parenting classes. While lack of parental cooperation by itself is insufficient, it is pertinent in finding that deprivation will continue. *Heitkamp v. L.J. and R.J., supra*, 436 N.W.2d 558; *In Interest of V.J.R.*, 387 N.W.2d 499 (N.D.1986).

■ In May of 1986, psychological evaluations were done in Minnesota on both parents and in March of 1987 Cindy was again evaluated. The juvenile court determined that these reports demonstrated very serious questions about the ability of Cindy and Loren to parent. An expert expressing a factually supported opinion or prediction that Cindy will likely not be a fit parent in the near future would, of course, have been helpful but where the facts themselves readily lead to that conclusion by the juvenile court, we are not prepared to conclude otherwise merely because no expert witness expressly predicted that kind of future. *In Interest of J.S.*, 351 N.W.2d 440 (N.D.1984).

■ In the memorandum opinion granting termination of parental rights, the juvenile court noted that since the order of March 7, 1986, "dealing with the subject of temporary custody and visitation, which incidentally was designed to give the parents the opportunity to show the Court that they were fit and proper parents to parent these children, there has been mainly a downhill trend...."

While in Minnesota, Loren was incarcerated for a sexual crime involving a minor boy. Cindy and Loren's marriage disintegrated and they obtained a divorce. Cin-

dy attempted suicide and was placed in a medical facility. In September of 1987, Cindy moved to South Dakota to obtain employment. However, she subsequently voluntarily terminated that employment. Cindy has made infrequent, intermittent contact with her children. In fact, for whatever reason, Cindy did not exercise visitation with the children from December of 1986, when the children were transferred back to North Dakota, until December of 1987.

These facts, along with other evidence in the record, establishes that deprivation will likely continue if Cindy's parental rights are not terminated.

### HARM TO THE CHILDREN

After being transferred back to North Dakota in December of 1986, the two older children were placed in therapy with a social worker who saw them on a weekly basis. At the termination hearing, this therapist testified that there is little, if any, parent-child bond between the children and their parents. When Neal and Tina spoke of their parents, it was generally in relation to negative experience. While they were curious about "mommies" and "daddies," they did not ask about their own parents. Upon seeing their parents after a period of one year, the behavior of both children regressed. It was the opinion of their therapist that the severance of the relationship between the children and their parents is in the children's best interest.

The "best interest of the child" is one factor to be considered even though it is not the primary question before the court in a deprivation or termination proceeding. *In Interest of J.K.S., supra,* 356 N.W.2d at 93. It is a factor of considerable concern whenever a child has been absent from its natural parents for such period of time as permits the development of a psychological parent-child relationship with others. *Id.*

We have said before that an arbitrary rule setting forth the time and effort that must be expended to help parents provide an adequate environment for their children before a termination of parental rights is sought is not appropriate. *See In Interest of J.K.S., supra,* 356 N.W.2d 88. "Even though long-term and intensive treatment may assist the parents, it is not mandated if it cannot be successfully undertaken in a time frame that would enable the child to return to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care." *In Interest of J.K.S., supra,* 356 N.W.2d at 92.

At the time of the deprivation hearing in February 1988, the children had been out of their parents' home for two years and had been living with their grandparents for over a year. This is apparently a loving and stable environment. The grandparents have indicated that they eventually wish to adopt the three children. The record indicates that the children would suffer harm if they were taken out of their current environment and returned to Cindy.

Although Neal and Tina remember their parents and the events that occurred prior to February of 1986, Annette was only a baby at that time. The fact that Annette does not yet display the same symptoms as her siblings does not preclude a finding of deprivation as to her. We need not wait the happening of tragic events to protect Annette. *See Sexton v. J.E.H.,* 355 N.W.2d 828 (N.D.1984).

We conclude from our analysis of the record that there is clear and convincing evidence to support the findings of the juvenile court relative to the deprivation of the children, of the likelihood of the continuance of its cause, and of the harm to the children.[1] Accordingly, we affirm the order of termination of parental rights.

VANDE WALLE, GIERKE, MESCHKE and LEVINE, JJ., concur.

---

1. The juvenile court made Findings of Fact which included the following:

"That while living with their children in Ellendale, North Dakota, in February of 1986, [Loren] and [Cindy] had their three children removed from their home by Dickey County Social Services for child abuse and neglect.

"That the abuse and neglect included physical beatings given to [Tina] and [Neal] by both [Loren] and [Cindy], these beatings being done with hands, wooden sticks, or wooden spoons, leaving visible bruises on both children.

"That in 1986, while in Minnesota, [Loren] and [Cindy's] marriage disintegrated and they divorced in 1987.

"That in 1986, while in Minnesota, [Cindy] failed to follow through with parenting classes.

"That in 1986, while in Minnesota, [Cindy] attempted suicide and was placed in a medical facility.

"That the parents, [Loren] and [Cindy] had only intermittent contact with the three children in 1987.

"That in December of 1987, [Loren] and [Cindy] had a supervised visit with the children at the Human Service Center in James-

town, North Dakota, and according to the grandparents and the child care provider, the two older children, [Tina] and [Neal], suffered a serious emotional setback following the visit, it taking weeks for the children to recover.

"That the parents [Loren] and [Cindy], have both been psychologically evaluated in the past and both appear to have serious emotional or psychological problems."

Based upon its Findings of Fact, the court concluded:

"2) That the three minor children, [Tina], [Neal] and [Annette], have suffered serious physical and emotional abuse and neglect at the hands of respondents, [Loren] and [Cindy];

"3) That this serious physical and emotional abuse is likely to continue if parental rights are not terminated;

"4) That services have been provided for [Loren] and [Cindy] but not followed through in an appropriate fashion by these parties, particularly in Minnesota in 1986, and following months;

"5) That it is in the best interests of the children to have any legal bond with their parents, [Loren] and [Cindy] terminated and that the determination be made concerning the care, custody and control of said minor children; and

"6) That the physical and emotional abuse referenced above is not due to financial reasons."