**In the Matter of the ADOPTION OF K.S.H., a Minor.**

**E.H. and I.H., Petitioners and Appellants,**

**v.**

**E.H. and John Graham, Executive Director of the North Dakota Department of Human Services, Respondents and Appellees.**

**Civ. No. 880356.**

Supreme Court of North Dakota.

June 27, 1989.

---

Sharon Wilson Martens, Park River, for petitioners and appellants.

Legal Aid Ass'n, University of North Dakota School of Law, University Station, Grand Forks, for respondents and appellees; argued by Cindy S. Conley, Third-year Law Student, under the direction of Susan T. Utech.

GIERKE, Justice.

E.H. (hereinafter "Edward", a pseudonym) and I.H. (hereinafter "Ida", a pseudonym), the paternal grandparents of the minor child K.S.H. (hereinafter "Kevin", a pseudonym), appeal from a district court judgment entered October 12, 1988, which declined to terminate the parental rights of the natural father of Kevin, E.H. (hereinafter "Eugene", a pseudonym), and upon that, denied the grandparents' petition for adoption. We affirm.

Kevin was born on July 19, 1974, in Park River, North Dakota. Kevin's parents were subsequently divorced and his mother voluntarily terminated her parental rights to Kevin on April 18, 1979. Kevin's father, Eugene, has been hospitalized for a mental illness diagnosed as schizophrenia and is currently on medication and has counseling, both on an inpatient and outpatient basis. Kevin has been living with his grandparents, Edward and Ida, by court order for most of his life.[1] However, Eugene has exercised visitation with Kevin on a fairly regular basis.

On June 20, 1988, Edward and Ida commenced proceedings to adopt Kevin. The reason that the grandparents initiated the adoption proceedings was that Kevin asked to be adopted by them. Kevin explained that he wanted to be adopted by his grand-

---

1. While the record neither includes the court order transferring custody of the minor child to the grandparents nor specifically indicates the basis of such an order, we assume that the court order transferring legal custody of the child to the grandparents was pursuant to Section 27–20–30 of the North Dakota Century Code which provides as follows:

"27–20–30. Disposition of deprived child.—
"1. If the child is found to be a deprived child the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child:
a. Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child;
b. Subject to conditions and limitations as the court prescribes, transfer temporary legal custody to any of the following:
(1) Any individual who, after study by the juvenile supervisor or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child;
(2) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child;

(3) The director of the county welfare board or other public agency authorized by law to receive and provide care for the child;
(4) An individual in another state with or without supervision by an appropriate officer under section 27–20–40; or
c. Without making any of the foregoing orders transfer custody of the child to the juvenile court of another state if authorized by and in accordance with section 27–20–39 if the child is or is about to become a resident of that state.
"2. Unless a child found to be deprived is found also to be delinquent he shall not be committed to or confined in an institution or other facility designed or operated for the benefit of delinquent children."

We further note that almost every two years since 1978, the custody of Kevin, the minor child, was contested and the court has found Kevin to be a deprived child and has placed custody with his grandparents, Edward and Ida. Kevin has not lived with his father, Eugene, for approximately the past ten years with the exception of a six-week period from December of 1984 through January of 1985 at which time Kevin was removed to Edward and Ida's custody by court order.

parents because he had a feeling of insecurity stemming from the fact that his grandparents had custody while his father maintained parental rights.

The trial court treated the case as a combined termination and adoption proceeding. While Eugene does not challenge the fact that Edward and Ida have custody of Kevin, he did not consent to the termination of his parental rights or to the adoption.[2] Accordingly, a hearing was held on August 29, 1988, to determine whether or not Eugene's parental rights should be terminated and then, whether or not to allow Edward and Ida to adopt Kevin. The trial court declined to terminate Eugene's parental rights and therefore denied Edward and Ida's petition for adoption. This appeal followed.

The issue raised on appeal is whether or not a trial court has discretion under Section 27–20–44 to terminate parental rights and, if so, whether or not the trial court was correct in refusing to terminate the parental rights and denying the petition for adoption.

█ Our statute governing the termination of parental rights is part of the Uniform Juvenile Court Act which is codified in Chapter 27–20 of the North Dakota Century Code. This Court has recognized that cases involving the termination of parental rights are difficult. *In Interest of M.N.*, 294 N.W.2d 635 (N.D.1980). Parents have a fundamental, natural right to their children which is of constitutional dimension. *McBeth v. J.J.H.*, 343 N.W.2d 355 (N.D.1984). However, the parent's right is not absolute and may be curtailed in certain circumstances. *Asendorf v. M.S.S.*, 342 N.W.2d 203 (N.D.1983). The primary purpose of the Uniform Juvenile Court Act is to protect the welfare of the child, *Kleingartner v. D.P.A.B.*, 310 N.W.2d 575 (N.D. 1981), and the best interest of the child is one factor to be considered in determining the necessity that parental rights should be terminated. *In Interest of J.K.S.*, 356 N.W.2d 88 (N.D.1984). Termination of parental rights is governed by Section 27–20–

44 of the North Dakota Century Code which provides as follows:

"27–20–44. Termination ·of parental rights.—

"1. The court by order may terminate the parental rights of a parent with respect to his child if:

a. The parent has abandoned the child;

b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm; or

c. The written consent of the parent acknowledged before the court has been given.

"2. If the court does not make an order of termination of parental rights it may grant an order under section 27–20–30 if the court finds from clear and convincing evidence that the child is a deprived child."

In the instant case, the trial court, in denying termination of the parental rights, stated in its memorandum opinion as follows:

"The child is deprived as defined by statute, *i.e.*, this court has so repeatedly decreed in prior orders and such condition is here determined will likely not be remedied and because of it the child will probably suffer serious harm. Only on this basis is the court jurisdictionally able to terminate parental rights and allow the adoption. The father has been unable to care for the child and the prognosis is certain that he will never have that ability.... Petitioners have shown by clear and convincing evidence that this ground does exist for termination of parental rights. There is no compulsion upon the court to grant the request because the statute is framed as a discretionary decision. Although the 'harm' done will probably not change, I do not

---

**2.** Our adoption statutes are found in Chapter 14–15 of the North Dakota Century Code which

may be cited as the Revised Uniform Adoption Act.

find deprivation, alone, sufficient reason to cut the parental bond. He has received loving care from his grandparents and the situation will not be changed by whatever this court does. A compelling reason to terminate is absent."

Thus, the trial court found sufficient evidence to give it the authority to terminate parental rights under Section 27–20–44(1)(b). Nevertheless, the trial court interpreted the statute as discretionary with regard to the actual termination of parental rights. Accordingly, the trial court exercised its discretion in refusing to terminate the parental rights of the father because there was no compelling reason to do so.

We must initially determine whether or not the decision to terminate parental rights under Section 27–20–44 is discretionary with the trial court.

■ This Court has stated that in construing a statute, consideration must be given to the ordinary sense in which words are used, the context in which they are placed, and the purpose of the enactment as ascertained from the whole act. *Stutsman County v. State Historical Soc. of North Dakota*, 371 N.W.2d 321 (N.D.1985); *see also Harding v. City of Dickinson*, 76 N.D. 71, 33 N.W.2d 626 (1948); Section 1–02–02, N.D.C.C.

Subsection 1 of Section 27–20–44 specifically provides that "[t]he court by order may terminate the parental rights of a parent...." The statute uses the word "may" which as ordinarily understood in a statute is permissive rather than mandatory and operates to confer discretion. *Timm v. Schoenwald*, 400 N.W.2d 260 (N.D.1987); *Harding v. City of Dickinson, supra; Novak v. Novak*, 74 N.D. 572, 24 N.W.2d 20 (1946). Also, subsection 2 of Section 27–20–44 provides that even if the trial court does not terminate parental rights upon a finding of deprivation, it may grant an order under Section 27–20–30. Thus, the entire statutory scheme of Section 27–20–44 indicates that the trial court may exercise its discretion with regard to parental rights and the disposition of a deprived child.

Accordingly, we believe that the decision to terminate parental rights pursuant to Section 27–20–44 is discretionary. Having determined that termination of parental rights under Section 27–20–44 is discretionary, we must next decide whether or not in the instant case the trial court was correct in refusing to terminate parental rights.

Our scope of review in deprivation cases is governed by Section 27–20–56(1) of the North Dakota Century Code which provides that our review shall be based upon the files, records, and minutes or transcript of the evidence of the trial court. We give appreciable weight to the trial court's findings and recognize the trial court's opportunity to observe the demeanor of the witnesses, but we are not bound by those findings. *See* Section 27–20–56(1), N.D. C.C.; *In Interest of A.M.A., T.N.A. and N.D.A.*, 439 N.W.2d 535 (1989); *In Interest of L.J. and R.J.*, 436 N.W.2d 558 (N.D. 1989); *In Interest of J.A.L.*, 432 N.W.2d 876, 878 (N.D.1988). Thus, we are allowed to review the evidence in a manner similar to the former procedure of trial de novo. *In Interest of J.A.L., supra; In Interest of R.M.B.*, 402 N.W.2d 912, 914 (N.D.1987).

■ In the instant case, the trial court explained in its memorandum opinion that:

"It is a tenet of natural law that the child belongs to the parent and that needs no elaboration. As we have become more civilized society finds it necessary to intervene in certain situations so that the child may be protected and nourished. The ultimate intervention is the stripping of a parent's rights of their own offspring. In North Dakota, as elsewhere, the legal and constitutional rights of a parent to his child is paramount, but it is not absolute.

"It is the decision of this Court that the parental rights of [Eugene] will not be terminated...."

The trial court in denying termination noted that the decision to terminate parental rights was discretionary. The trial court recognized in the instant case that the child has received loving care from his grandparents and that the situation will not be

changed by whatever decision the trial court made regarding termination.

Based upon our review of the testimony adduced at the hearing, giving appreciable weight to the findings of the trial court and its opportunity to observe the demeanor of the witnesses, we do not believe that it has been established that the child has suffered or will probably suffer serious harm if the parental rights of his father are not terminated. While the child's insecurity was presented as evidence of serious harm, there was no expert testimony or other objective indications of harm, i.e., such as sleeplessness, diminished health, decreased school performance and attendance, etc., provided on this matter and we deem it insufficient to justify the termination of parental rights. Accordingly, we do not believe that the trial court's decision not to terminate parental rights was incorrect. Therefore, we conclude that the trial court did not err in refusing to terminate parental rights of the father and in denying the grandparent's petition for adoption.

For the reasons stated in this opinion, the decision of the district court is affirmed.

MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I reluctantly concur. The ideal solution to this problem might be statutes that would permit the grandparents to adopt Kevin without the necessity of terminating the natural father's parental rights. But our statutes do not permit such a solution.

Our law recognizes no more than one legal father and does not permit adoption without termination of parental rights of the natural parent.

This is an unusual case in which the impetus for adoption came from 14-year-old Kevin who wanted to be adopted by the grandparents who raised him and are, in fact, Kevin's surrogate parents. This is not the situation we see occasionally on appeal in which the grandparents instigate of their own volition proceedings to terminate the parental rights of their natural child in order that they may adopt them. E.g., *Sexton v. A.M.A.*, 439 N.W.2d 535 (N.D.1989). Kevin's natural father is schizophrenic and not only is he currently on medication and in counseling but the prognosis for any substantial improvement in his condition is poor. The probabilities are that he never will be able to care for Kevin as a normal parent. An attempt was made to place Kevin in his father's custody for a six-week period in 1984–1985, but Kevin was returned to his grandparents as a result of his father's inability to provide proper care for Kevin.

Because Kevin is a deprived child within the meaning of our statute, his custody is determined by the juvenile court under Chapter 27–20, N.D.C.C. That custody determination must be reviewed every two years pursuant to Section 27–20–36(3), N.D. C.C.[1] In the past Kevin's father has opposed continued custody being given to the grandparents without any realistic possibility that he could be granted custody because of his mental illness. Nevertheless

---

1. Section 27–20–36(3), N.D.C.C., provides that an order of disposition pursuant to which a child is placed in foster care continues in force for not more than eighteen months and that any other order of disposition continues in force for not more than two years. The 1989 Legislative Assembly amended subsection 4(d) of Section 27–30–36 which limits an extension of an order of disposition to not to exceed eighteen months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order, to provide:

"However, the court may order that the child permanently remain in foster care with a specified care giver and that the duration of the order be left to the determination of the court if the court determines that:

"(1) All reasonable efforts have been made to reunite the child with the child's family;
"(2) The deprivation is likely to continue;
"(3) With respect to a child under the age of ten, termination of parental rights and subsequent adoption would not be in the best interests of the child; and
"(4) The placement of the child in permanent foster care is in the best interests of the child."
See S.B. 2295, 1989 Legislative Assembly.
Had such a provision been in force at the time of the hearing resulting in the order from which this appeal was taken, and had the trial court been able to implement the provision, it might have allayed some of Kevin's uncertainty and fear of the periodic custodial battles.

the evidence in the record reflects that the grandparents encouraged and assisted in maintaining the relationship between their son and grandson and did nothing to discourage visitation between the two. It is undisputed that Kevin requested that he be adopted by his grandparents. It is contended the reasons for the request are Kevin's need for a sense of belonging and the fear of the custody battles which arise at two-year intervals. Kevin specifically testified that he wanted to continue to see his father and would continue to see his father.

Kevin is being well cared for by his grandparents—the persons whom he requested to adopt him and who petitioned to adopt him. The result of the majority opinion appears to be that the parent whose unfortunate circumstances resulted in foster care is entitled to take advantage of the good care provided by another for the purpose of arguing that there is no evidence that the conditions and causes of deprivation are likely to continue. Were Kevin to be in his father's care there is little dispute in the record that he would be deprived. If the grandparents did not care for Kevin he would be in a foster home. Furthermore, the trial court did find deprivation and stated:

"Petitioners have shown by clear and convincing evidence that this ground [deprivation] does exist for termination of parental rights. There is no compulsion upon the court to grant the request because the statute is framed as a discretionary decision. Although the 'harm' done will probably not change, I do not find deprivation, alone, sufficient reason to cut the parental bond. He has received loving care from his grandparents and the situation will not be changed by whatever this court does."

The trial court further stated:

"I find it to be in the best interest of the child to be adopted, however, this cannot override the right of the parent to custody where consent is not obtained or excused."

Additionally, the trial court found that the father "has a singular reason for opposing the adoption; he fears that his visitation rights would be curtailed or limited." The trial court concluded that "The fear expressed by the father about visitation is not well founded. There is no rational reason to think that once the adoption is completed that [the father] would be cut off from contact with his child. This has never happened in the past and the attitude of the [grandparents] indicates it will not happen in the future."

The trial court discussed the various bases for terminating parental rights under either Chapter 27–20, the Juvenile Court Act, and Chapter 14–15, the Revised Uniform Adoption Act. Those reasons include abandonment and deprivation. The trial court indicated there was no evidence of abandonment and, that although there was deprivation, it was not a sufficiently compelling reason to terminate.

Section 14–15–06(j) provides:

"1. Consent to adoption is not required of:

. . . .

"j. A parent of the minor, if the failure of the parent to consent is excused by the court in the best interest of the child by reason of the parent's prolonged unexplained absence, unavailability, incapacity, . . ."

Section 27–20–44 permits the termination of parental rights if the child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm. The findings of the trial court, sustained in the record, are that this child is deprived and that the causes of deprivation are likely to continue.

I can understand sympathy for the father. I do not believe it outweighs the interests of the child. The record is replete with cause to terminate the parental rights and, as the trial court has noted, the only reason for the father's refusal to consent to the adoption is an irrational reason that he would be denied the right to visit his son. There are some obvious benefits to Kevin from the adoption, not the least of

which is the avoiding every two years the emotional trauma of a hearing in which his custody is disputed by a father who realistically will not be able to assume custody. More important, however, if Kevin were to be adopted it would assure Kevin that his future custody and well being will be determined by the loving grandparents with whom he has lived nearly his entire life and not by an irrational father or a court!

Although the equities of this case are clearly with Kevin, the ultimate effect of the trial court's denial of the adoption is unknown. It may be, as the trial court concluded, that the situation would not change whether the court granted or denied the petition for adoption or whether it terminated the parental rights of Kevin's father. There is no testimony, expert or otherwise, in the record on that matter other than Kevin's own testimony. Were there any expert testimony that the failure to allow Kevin's grandparents to adopt him would have a deleterious effect on Kevin, I would reverse because the evidence of continued deprivation is substantial. The statute may, as the trial court believed, be discretionary, but it would be an abuse of that discretion to deny the adoption if there were evidence that the denial would seriously affect Kevin's emotional well being.

ERICKSTAD, C.J., concurs.