In the Interest of J.H. and
A.H., Children.

Mark R. BOENING, Plaintiff
and Appellee,

v.

DIRECTOR, CASS COUNTY SOCIAL
SERVICES, S.H., J.H., A.H.,
Defendants,

and

Leslie Deborah Johnson, f/k/a Leslie
Johnson–Soetebier, Guardian Ad
Litem, Defendant and Appellee,

T.W., Defendant and Appellant.

Civ. No. 910245.

Supreme Court of North Dakota.

April 21, 1992.

Schuster, Brothers & Beauchene, Fargo, for defendant and appellant; argued by Mark A. Beauchene.

Constance L. Cleveland (argued), Asst. States Atty., Fargo, for plaintiff and appellee.

Leslie Deborah Johnson, Fargo, guardian ad litem, for defendant and appellee; submitted on briefs.

JOHNSON, Justice.

T.W., (Tess, a pseudonym) appeals from a juvenile court amended judgment which terminated her parental rights to two minor daughters and gave John A. Graham, in his capacity as Executive Director of the North Dakota Department of Human Services, custody, control, and responsibility for their adoption.[1] We affirm.

Tess has two daughters J.H. (Jill, a pseudonym), born on the 17th day of May, 1982, and A.H. (Ann, a pseudonym), born on the 20th day of May, 1983. Cass County Social Services first became involved with Tess and her children during the summer of 1983, when Tess was new to the Fargo area, and she was in need of supportive services.

Kathy Suedel, a Cass County social worker worked with Tess and the children from 1983 to 1990, during which time Tess had 17 different addresses. Suedel testified that Tess's housekeeping skills were poor, and when she visited Tess's home she observed dirty dishes, garbage and animal waste about the home, dirty clothes, and no food in the house at times. Suedel also stated that Tess often would have other

---

**1.** It is indicated throughout the record that Tess's brother and sister-in-law are willing to adopt the children.

people living with her who served as pseudo-parents to the children when they were in the home.

In April of 1988, social services filed a petition for legal custody of the children, physical custody to remain in Tess. This arrangement was conditioned upon certain requirements; including, allowing the parent aide into her home and psychiatric counseling for her and the children. Tess reluctantly cooperated. In April of 1990, legal custody was returned to Tess, with the expectation she would continue to follow the requirements. At this time, her relationship with social services deteriorated. She stopped taking her children to their psychiatrist, and she would not let the home aide enter her home, although she continued counseling with her psychiatrist.

In August of 1990, she admitted herself into St. Ansgar hospital for mental illness. She left the children with her then husband, J.W. During this time the children were sexually abused by someone having access to J.W.'s home. In October of 1990, J.W. left the children with Tess's mother when he could no longer care for them. The children remain with their grandmother.

Tess admits that her children are deprived as defined by section 27–20–02(5), N.D.C.C.[2] However, she argues that the State did not prove by clear and convincing evidence that this deprivation is likely to continue in the future. She claims that her parental rights should not be terminated because she is now willing to cooperate with social services to keep custody of her children. She claims that she has made affirmative steps to improve her situation so that the children would have an appropriate home.

Tess testified that she has taken steps to improve her life. She stated that she now lives on a farm near Davenport, North Dakota, with Jesse Maas, a friend who has helped her with her finances. She has arranged for a new social worker to work with in Cass County, and she has looked for a new counselor because Dr. Farmer, her psychiatrist, is leaving the state and she admits that she has emotional problems. She stated her willingness to receive parenting assistance from social services but not from her family. She felt that there were too many difficulties between her and her family which created a poor atmosphere. She claimed that she would cooperate with whatever rules the juvenile court set down concerning the children and that, in the future, she could eventually provide an appropriate home for them.

The juvenile court determined that Tess is a handicapped person suffering from mental illness, and that short-term treatment of such conditions is not usually successful. Tess has required intervention in order to parent her children in the past. The juvenile court found that it is unlikely she will acquire any necessary parenting skills in the near future. These children were determined to be at risk of psychological harm due to their mother's lack of stability and parenting skills. The juvenile court ordered that the parental rights of Tess be terminated, and that the Department of Human Services be given the custody of the children.[3]

Authority for termination of parental rights is taken from the Uniform Juvenile Court Act, codified at chapter 27–20,

2. Section 27–20–02(5), N.D.C.C., reads:
'Deprived child' means a child who:
  a. Is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals, and the deprivation is not due primarily to the lack of financial means of the child's parents, guardian, or other custodian;
  b. Has been placed for care or adoption in violation of law;
  c. Has been abandoned by the child's parents, guardian, or other custodian; or
  d. Is without proper parental care, control, or education as required by law, or other care and control necessary for the child's well-being because of the physical, mental, emotional, or other illness or disability of the child's parent or parents, and that such lack of care is not due to a willful act of commission or act of omission by the child's parents, and care is requested by a parent.

3. The parental rights of the natural father of these children will also be terminated at his request under section 27–20–44(1)(c), N.D.C.C.

N.D.C.C. Appeals are governed by section 27–20–56, N.D.C.C., which states in part: "The appeal must be heard by the supreme court upon the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court." Section 27–20–56(1), N.D.C.C. *See Bernhardt v. K.Q.*, 423 N.W.2d 803, 803 (N.D.1988). In essence, our examination is similar to a trial de novo. *In Interest of D.R.*, 463 N.W.2d 918, 919 (N.D.1990); *In Interest of A.M.A.*, 439 N.W.2d 535, 537 (N.D.1989); *In Interest of J.A.L.*, 432 N.W.2d 876, 878 (N.D.1988).

The State seeks to terminate Tess's parental rights under section 27–20–44(1)(b), N.D.C.C., which states:

1. The court by order may terminate the parental rights of a parent with respect to his child if:

    \*    \*    \*    \*    \*    \*

    b. The child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm. . . .

The State must prove by clear and convincing evidence that: "(1) the child is a 'deprived child'; (2) the conditions and causes of deprivation are likely to continue or will not be remedied; and (3) by reason of the continuous and irremediable conditions and causes, the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." *In Interest of J.A.L.*, 432 N.W.2d at 878 (citing *Bernhardt*, 423 N.W.2d at 803); *see also In re H.*, 206 N.W.2d 871, 873 (N.D.1973).

■ Evidence concerning prior abuse and deprivation can be considered in order to determine if such deprivation is likely to continue. *In Interest of A.M.A.*, 439 N.W.2d at 538; *Kleingartner v. D.P.A.B.*, 310 N.W.2d 575, 579 (N.D.1981). "Prognostic evidence must show that the parent is presently unable to supply physical and emotional care for the child, with the aid of available social agencies if necessary, and

that this inability of a parent will continue for time enough to render improbable the successful assimilation of the child into a family if the parents' rights are not terminated." *In Interest of L.J.*, 436 N.W.2d 558, 563 (N.D.1989); *see also In Interest of J.A.L.*, 432 N.W.2d at 878.

■ Tess argues that although she cannot properly provide for the children at this time, she is confident that, with counseling and aid from social services, she will be able to provide an appropriate home. She admits to having various problems requiring treatment, most specifically, mental illness. However, she asserts that when social services had legal custody and she had physical custody there were substantial periods of time when the children were being adequately provided for under her care. She claims that because her mental illness causes her to have poor judgment in regard to relationships and living arrangements, she should not be penalized by having her parental rights terminated.

Our review of the testimony and record of this case supports the juvenile court's determination that this deprivation is likely to continue.

The guardian ad litem in this case recommended that Tess's parental rights be terminated. In a letter to the juvenile court on May 9, 1991, the guardian disclosed that she had spent a considerable amount of time talking to the family and professionals involved in this case. The guardian stressed the fact that these children have suffered by tolerating unfit living conditions, and that they are now suffering from posttraumatic stress disorder. The guardian ad litem urged the juvenile court to terminate Tess's parental rights before any more damage was done to these children.

The juvenile court heard testimony by several people; including, Dwight H. Lysne, M.D., an adolescent psychiatrist who has treated the children since March of 1988, and Ronald M. Burd, M.D., a psychiatrist who evaluated Tess. Dr. Lysne testified that he has been working continuously with the children since 1988, except for a five-month gap from May to October

of 1990. During this time, social services had returned legal custody to Tess. Dr. Lysne stated that the children currently suffer from "posttraumatic stress disorder" and that this condition arises from their fears. They have problems sleeping, eating, and are often depressed. He testified that this condition most often occurs in veterans who faced front-line combat situations, and has been recognized in children, adolescents, and adults who have been victims of abuse. Dr. Lysne stressed the importance of stability to children and stated that these children have lost their basic sense of trust because of the lack of stability in their lives.

Dr. Lysne testified that, based upon his examination of the children and the statements they had made to him, he believes that they could not be successfully reunited with their mother. He believes that Tess is dysfunctional due to her mental illness, and that she is unable to meet the needs of these children, or to keep their environment safe. He testified that the likelihood of Tess being able to meet the needs of these children in the near future is very low. He also stated that, if the children were to live with Tess, they would be likely to continue to suffer serious mental or emotional harm.

Dr. Burd testified that he had examined Tess on two occasions and had reviewed the last three years of records of Dr. Farmer, who had been treating Tess for several years. Dr. Burd testified that she suffered from psychiatric disorders that presumably have a biologic nature. This included apparent depression and chemical dependency, characterized by instability and mood swings. Her lack of control and judgment has resulted in placing the children in difficult circumstances without proper supervision. The prognosis is not good, though the illness may burn itself out in a person's late 40's.

With regard to Tess's future parenting abilities Dr. Burd indicated that, although he did not evaluate the children, he spoke with Dr. Lysne regarding their condition. Dr. Lysne stressed the fact that these children were in great need of consistency in their lives because consistency has been seriously lacking. Dr. Burd indicated that, even in a maximally supported situation, the chances of Tess being able to adequately provide a stable environment are unsure. He also testified that he believes Tess's past cooperation with social services was not motivated by a desire to improve herself, but merely to satisfy social services. He believes that this behavior will continue in the future.

The evidence reflects that these children have suffered for several years. This suffering has resulted in the posttraumatic stress syndrome found in both children. This syndrome has been caused from years of instability, constant moving from place to place, poor living conditions, inadequate supervision and care, and a lack of consistency in their lives. These children, now eight and nine years old, need to have a safe stable environment in order to have an opportunity to recover from the emotional damage they have endured. The testimony of Dr. Burd and Dr. Lysne clearly indicates that these children will continue to suffer harm if their mother's parental rights are not terminated.

The juvenile court was in a superior position to examine the demeanor and the credibility of the witnesses who testified in this case, especially Dr. Lysne, Dr. Burd, and Tess. Therefore, we give deference to the juvenile court's interpretation of the live testimony. *In Interest of M.H.*, 475 N.W.2d 552, 556 (N.D.1991).

> The trial court is the ultimate arbiter of the credibility of the witnesses and the weight to be given their testimony. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact.

*Id.* at 557 (quoting *Weiss v. Anderson*, 341 N.W.2d 367, 371 (N.D.1983)).

From our review of the record and transcript of the hearing, giving deference to the juvenile court's superior position to determine credibility, we believe that the determination that deprivation is likely to continue is supported by clear and convincing evidence; therefore, we affirm.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.