**In the Interest of D.R. and B.R., Minor Children.**

**Donalda BINSTOCK, Petitioner and Appellee,**

v.

**D.R. and B.R., minor children, and G. and S.R., their parents, and Gary Sprynczy-natyk, legal custodian of said children, Respondents,**

**S.R., parent, Respondent and Appellant.**

**Civ. No. 940124.**

Supreme Court of North Dakota.

Dec. 20, 1994.

Owen K. Mehrer, State's Atty., Courthouse, Dickinson, for petitioner and appellee. Submitted on brief.

Dennis W. Lindquist of Murtha & Murtha, Dickinson, for respondents. Submitted on brief.

William G. Heth, Dickinson, for respondent and appellant. Submitted on brief.

MESCHKE, Justice.

S.R. (hereafter Susan, a pseudonym) appeals a juvenile court order terminating all of her parental rights and obligations to her two sons, D. and B.R. (hereafter Doug and Bill, pseudonyms). We affirm.

Susan and G.R. (hereafter George, a pseudonym) had two children, Doug and Bill. Doug was born on May 31, 1987, and Bill was born on December 28, 1988. On April 15, 1991, the juvenile court found Doug and Bill were deprived children. They were removed from the home and placed with Stark County Social Services, where their care, custody, and control has remained since.

On February 1, 1994, a representative of Stark County Social Services petitioned to terminate the parental rights of Susan and George. After trial, the juvenile court terminated their parental rights to Doug and Bill.

Both parents conceded that the children were deprived but, in lieu of termination, sought long-term foster care to permit continuing parental visitation with the children. The trial court found that father George "suffers from schizophrenia, as to which he has failed to follow through on appointments with his psychiatrist to allow the doctor to monitor [his] schizophrenic condition." Further, "[t]hat actual physical abuse to the children ... was probably committed by [George]." Mother Susan, the trial court tells us, "has borderline intellectual functioning," and she "is unable to handle or control more than one issue or one child at a time and cannot or will not control the actions of [George] towards the children." Susan "became involved [in the abuse] by neglecting to protect the boys from [George]."

Doug, the older boy, "suffers from post-traumatic stress disorder [from] prior abuse and neglect perpetrated by his parents and reflected in regression and disruptive and destructive behavior following visits with one or both of his parents." Bill, the younger boy, "suffers from delayed development of motor skills, cognitive skills, social and emotional development skills, expressive and receptive language skills, and self-help skills." "[Bill] is presently on prescribed anti-seizure medications and has demonstrated rage and anger after visits with either or both of his parents," according to the findings. Before the trial, both children had been in foster care for almost three years, and no parental visitation had been allowed for the last six months.

The trial court concluded that "Stark County Social Services has provided numerous services ... including intensive in-home therapy. All programs and services provided ... have failed, and such failure is not due to

the actions of Stark County Social Services." The court found that Doug and Bill are deprived children, that the deprivation was likely to continue, and that Doug and Bill continue to suffer from the deprivation.

The court ordered that all parental rights of both Susan and George be terminated. The court kept custody and control of Doug and Bill with Stark County Social Services, and ordered the agency to seek placement for adoption "with all [due] diligence." Only Susan appeals.

Susan does not challenge any factual findings. Rather, she asks on appeal that Doug and Bill "permanently remain in foster care" in order to "allow her to remain the mother of her two sons with some ever so limited contact." Like the trial court, we do not agree that foster care is a reasonable alternative to termination of parental rights in this case.

■ Under the Uniform Juvenile Court Act, as codified in North Dakota, "[t]he court by order may terminate the parental rights of a parent with respect to his child if ... [t]he child is a deprived child and the court finds that the conditions and causes of the deprivation are likely to continue or will not be remedied and that by reason thereof the child is suffering or will probably suffer serious physical, mental, moral, or emotional harm." NDCC 27–20–44(1) (part). To terminate parental rights, the State must prove these requisite conditions by clear and convincing evidence. *McBeth v. M.D.K.*, 447 N.W.2d 318, 320 (N.D.1989). Here, Susan does not contest that the conditions for terminating her parental rights were clearly proven.

■ Instead, Susan argues that, under NDCC 27–20–36,[1] particularly subsection (4)(d), the court had power to decree that

---

1. The statute states:

*Limitations of time on orders of disposition.*

1. An order terminating parental rights is without limit as to duration.

....

3. An order of disposition pursuant to which a child is placed in foster care continues in force for not more than eighteen months. Any other order of disposition continues in force for not more than two years.

4. Except as provided in subsection 1, the court may sooner terminate an order of disposition

or extend its duration for further periods. An order of extension may be made if:

a. A hearing is held prior to the expiration of the order upon motion of a party or on the court's own motion;

b. Reasonable notice of the hearing and opportunity to be heard are given to the parties affected;

c. The court finds that the extension is necessary to accomplish the purposes of the order extended; and

Doug and Bill remain permanently in foster care, without termination of her parental rights, in order to allow her continued parental visitation.[2] In some circumstances, "the decision to terminate parental rights pursuant to Section 27–20–44 is discretionary." *Matter of Adoption of K.S.H.*, 442 N.W.2d 417, 420 (N.D.1989). However, this discretion is circumscribed. In a concurrence in *K.S.H.* at 423, Justice VandeWalle explained: "The statute may ... be discretionary, but it would be an abuse of that discretion to deny the adoption if there were evidence that the denial would seriously affect [the children's] emotional well being."

■ Here, even though urged to do so by Susan, the trial court made no finding that termination of parental rights and subsequent adoption would be contrary to the

children's best interests, as required by NDCC 27–20–36(4)(d)(3) to extend foster care permanently. The court found, rather, that "[t]he boys present developmental and emotional problems arise from their past abuse and prior home environment," and that both children "need a stable and permanent environment apart from their natural parents in order to address their ongoing mental and emotional difficulties." The trial court ordered that the county social service agency "seek appropriate placement or adoption for [Doug and Bill], and shall do so with all [due] diligence." We agree with that disposition. Under NDCC 27–20–36(4)(d)(3), a juvenile court should consider permanent foster care, in lieu of termination of a parent's rights, only if it determines that subsequent adoption is not in the best interests of the child.

d. The extension does not exceed eighteen months from the expiration of an order limited by subsection 3 or two years from the expiration of any other limited order. *However, the court may order that the child permanently remain in foster care with a specified caregiver and that the duration of the order be left to the determination of the court if the court determines that:*

   (1) All reasonable efforts have been made to reunite the child with the child's family;

   (2) The deprivation is likely to continue;

   (3) With respect to a child under the age of ten, termination of parental rights and subsequent adoption would not be in the best interests of the child; and

   (4) The placement of the child in permanent foster care is in the best interests of the child.

NDCC 27–20–36 (emphasis on portion that Susan relies on). This section is non-standard, varying greatly from the Uniform Juvenile Court Act version.

The emphasized alternative, with the four conditions for its use, was enacted in 1989 N.D.Laws ch. 386, § 1. One of the sponsors testified:

He stated currently when a child is placed in foster care, he can stay no longer than 18 months. There are many children in foster care, however, that will never be returned to their parents. In order to keep the child in foster care, they must go to court every 18 months to extend their stay. The hearings are hard on the parents, foster parents and the children involved to continually go through this process. Therefore, the intent of the bill is to skip this process in cases where it is obvious the child should remain in foster care.

Senator John M. Olson's testimony to the Senate Committee on Human Services and Veterans Affairs, February 3, 1989. He also testified at a later legislative hearing:

The foster care placement is only good for 18 months. At that time, the same process must go through a hearing for continued placement so the requesting, if applicable, is ongoing over and over again.

The main part of the bill is on page 2 and relates to those children in foster care where there is no hope of them returning to the natural parent. This provision would allow the court to place the child permanently in a foster home and no further hearing required. There are a number of limitations involved and all reasonable efforts must be made to reunite the child with the family. Following this procedure, a petition can be generated to eliminate constant hearing requests. This will establish a relationship and will benefit the child. It also protects the right of the child.

Senator John M. Olson's testimony to the Judiciary Committee of the House of Representatives, March 14, 1989.

2. For a discussion of a similar alternative, *see* Candace M. Zierdt, *Make New Parents But Keep the Old*, 69 N.D.L.Rev. 497 (1993) (advocating a form of open adoptions without terminating all of the biological parents' rights; birthparents would have visitation and communication rights, while adoptive parents would have all other control, similar to the common divorce solution of primary custody by one parent with visitation by the other one). *But see Matter of Adoption of K.S.H.*, 442 N.W.2d 417, 421 (N.D.1989) (VandeWalle, Justice, concurring) ("The ideal solution to this problem might be statutes that would permit the grandparents to adopt Kevin without the necessity of terminating the natural father's parental rights. But our statutes do not permit such a solution.").

In parallel cases, we have held that "long term and intensive treatment is not mandated if it cannot be successfully undertaken in a time frame that would enable the children to return to the parental home without causing severe dislocation from emotional attachments formed during long-term foster care." *In Interest of C.K.H.,* 458 N.W.2d 303, 307 (N.D.1990). *See also In Interest of D.R.,* 463 N.W.2d 918, 919–20 (N.D.1990) ("Even if a more consistent treatment could be contrived for [the mother], the scope of the necessary increased assistance, through constant supervised care for [the mother] and her children together, would be too extravagant and is not required by law."); *In Interest of J.A.L.,* 432 N.W.2d 876, 879 (N.D.1988) ("We agree with the juvenile court that providing foster care for [both children] in order to enable [the mother] to maintain her parental rights is an extreme not required by the law.").

Here, Dr. Ramos testified that parental visitation aggravated and caused regression in Doug's post-traumatic stress disorder. The boys' therapist, Mary Ann Brauhn, testified "that even with [Susan] the boys feel unsafe." This is not a situation suitable for consideration of long-term foster care.

In affirming termination of parental rights in another case, we concluded that the "children cannot be expected to wait and assume the risks involved" in long-term foster care. *C.K.H.,* 458 N.W.2d at 307. We agree with the trial court that these children should be placed for adoption.

We conclude that the trial court did not abuse its discretion in terminating Susan's parental rights. We affirm.